1  HECTOR O. VILLAGRA (BAR NO. 177586)
   hvillagra@aclu-sc.org
2  BELINDA ESCOBOSA HELZER (BAR NO. 214178)
   bescobosahelzer@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   2140 W. Chapman Ave., Suite 209
4  Orange, California 92868
   Telephone: (714) 450-3962
5  Facsimile: (714) 450-3969

6  MARK D. ROSENBAUM (BAR NO. 59940)
   mrosenbaum@aclu-sc.org
7  PETER BIBRING (SBN 223981)
   pbibring@aclu-sc.org
8  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 W. Eighth Street
9  Los Angeles, California 90017
   Telephone: (213) 977-9500
10 Facsimile: (213) 977-5299

11 Attorneys for Plaintiff-Petitioners

12

13

14                  **UNITED STATES DISTRICT COURT**

15             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16 MANUEL VASQUEZ, MIGUEL          )  Case No. SACV09-1090 VBF (RNBx)
   BERNAL LARA, GABRIEL BASTIDA,   )
17 JAMES DOE by and through his guardian )  The Honorable
   ad litem JANE DOE, and all others )
18 similarly situated,              )  **COMPLAINT FOR
                                    )  DECLARATORY AND
19            Plaintiff-Petitioners, )  INJUNCTIVE RELIEF AND
                                    )  PETITION FOR WRIT OF
20        vs.                       )  HABEAS CORPUS**
                                    )
21                                  )
   TONY RACKAUKAS, Orange County    )  **CLASS ACTION**
22 District Attorney, in his official capacity; )
   ROBERT GUSTAFSON, Chief of Police, )  Complaint Filed:
23 Orange Police Department, in his official )
   capacity; DOES 1 through 10, in their )  Trial Date: TBD
24 official and individual capacities, )
                                    )
25                                  )
              Defendant-Respondents. )
26

27

28

ORIGINAL

LODGED

**INTRODUCTION**

1.    Defendant-Respondent TONY RACKAUKAS, the Orange County District Attorney ("Defendant OCDA" or "OCDA"), and Defendant-Respondent ROBERT GUSTAFSON, Chief of the Orange Police Department ("Defendant OPD" or "OPD"), have violated the Constitution of the United States and the California Constitution by denying due process of law to Plaintiff-Petitioners MANUEL VASQUEZ (hereinafter "VASQUEZ"), MIGUEL BERNAL LARA (hereinafter "LARA"), GABRIEL BASTIDA (hereinafter "BASTIDA"), JAMES DOE (hereinafter "DOE"), and others similarly situated.

2.    The OCDA is a public official, elected by the People of this County and entrusted with representing the People of the State of California in criminal prosecutions, as well as public nuisance actions. As a public official, the OCDA is vested with considerable powers, but those powers are "conditioned by the fact that he is the representative not of any ordinary party to a controversy but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *People ex rel. Clancy v. Superior Court*, 705 P.2d 347, 350 (Cal. 1985) (internal citation marks and quotation omitted). Indeed, as a public official, the OCDA has a responsibility to seek justice, to develop a full and fair record, and not to use his position or the economic power of the government to harass parties or bring about unjust results. *Id.* The OCDA has failed to meet these basic responsibilities.

3.    On February 17, 2009, the OCDA brought a civil nuisance abatement lawsuit against an alleged criminal street gang, 115 named individuals alleged to be members of the gang, including Plaintiff-Petitioners, and 150 unnamed individuals alleged to be members of the gang, seeking to subject them to virtually identical preliminary and permanent injunctions that prohibit and, in effect, criminalize commonplace and lawful activities – such as going outside in the

1  evening, walking into a restaurant or onto a bus, or attending a political meeting or

2  religious service – in an area of the City of Orange totaling approximately 3.78

3  miles, referred to as the "Safety Zone." For every act in violation of the

4  injunction, a person can receive up to six months in jail and a $1,000 fine.

5      4.    At least 61 individuals, including Plaintiff-Petitioners, contested the

6  OCDA's allegations and sought as best they could – most had no attorney

7  representing them – to hold the OCDA to the burden of proving the case by clear

8  and convincing evidence. However, to avoid having to meet this burden, the

9  OCDA dismissed the suit against these individuals, depriving them of their day in

10 court. Having intentionally short-circuited the judicial process insofar as the

11 individuals dismissed from the suit are concerned, the OCDA and OPD turned

12 around and served them with a permanent injunction obtained via default against

13 the gang. These individuals are now bound by the injunction and immediately

14 subject to arrest and criminal prosecution for any violation of its terms. Thus, the

15 OCDA and OPD subjected individuals to the injunction without the apparent

16 nuisance of having to prove its case against them. Such tactics fly in the face of

17 due process and violate the Fourteenth Amendment to the United States

18 Constitution and Article I, section 7, of the California Constitution. Accordingly,

19 Defendant-Respondents should be prohibited from serving or enforcing the

20 injunction against Plaintiff-Petitioners unless and until they have had a meaningful

21 opportunity to contest the allegations against them and there has been a judicial

22 determination that the Order is justified and should issue against them.

23                              **JURISDICTION AND VENUE**

24      5.    This Court has jurisdiction over the federal civil rights claim under 28

25 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state

26 law claims under 28 U.S.C. § 1367(a).

27      6.    Because Plaintiff-Petitioners assert that Defendant-Respondents have

28

2

1  custody of them in violation of federal statutory and constitutional law, this Court

2  has jurisdiction to hear their challenge under the federal habeas corpus statute and

3  the Suspension Clause. *See* 28 U.S.C. § 2241(a); 28 U.S.C. § 2241(c)(3); U.S.

4  CONST. ART. I, cl. 9.

5      7.      This Court may grant relief under the habeas corpus statute, 28 U.S.C.

6  § 2241 et seq., the general federal question statute, 28 U.S.C. 1331, the federal

7  civil rights statute, 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. §

8  2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

9      8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because

10  Defendant-Respondents reside in, and all incidents, events, and occurrences giving

11  rise to this action occurred in, the County of Orange, California.  Venue is also

12  proper because all of the Defendant-Respondents are amenable to service of

13  process in this district.

## BACKGROUND

14

**A.    Gang Injunctions**

15

16      9.      More than a decade ago, the California Supreme Court authorized an

17  unprecedented law enforcement technique to deal with criminal street gangs -- the

18  issuance of a civil public nuisance injunction against alleged gang members that

19  restricted their activity in a four square-block area. *People ex rel. Gallo v. Acuna*,

20  929 P.2d 596 (Cal. 1997).  But *Acuna* and subsequent appellate decisions have

21  recognized that this is an extraordinary remedy that must be applied with great

22  caution. *Id.*; *People v. Englebrecht*, 106 Cal. Rptr. 2d 738 (Cal. App. 2001);

23  *People ex rel. Reisig v. the Broderick Boys*, 59 Cal. Rptr. 3d 64 (Cal. App. 2007).

24  Accordingly, the courts have made it clear that the prosecutor must meet a

25  heightened standard of proof by presenting "clear and convincing" evidence that

26  the necessary elements of a gang injunction are present before a trial court can

27  invoke its injunctive powers. *Englebrecht*, 106 Cal. Rptr. 2d at 738.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

10.    Gang injunctions warrant careful scrutiny because they prohibit commonplace, lawful activities, and thus can have a pervasive impact on the everyday lives of those bound and on their families.  Indeed, the reason that gang injunctions are so desirable from the perspective of law enforcement is precisely because they enjoin lawful and innocent activity that can be easily detected.  The police can arrest individuals for violating the gang injunction, and the prosecutor can charge them with contempt of court, a misdemeanor punishable by up to six months in jail and a fine of up to $1,000 under California Penal Code § 166.

11.    This case underscores the need for courts to scrutinize the way in which prosecutors obtain and police enforce gang injunctions.

**B.    The Initial Litigation**

12.    On February 17, 2009, the OCDA filed a civil complaint in the Orange County Superior Court (the "OCSC") for preliminary and permanent injunction to abate, as a public nuisance, the activities of an alleged criminal street gang referred to in the complaint as the "Orange Varrio Cypress Criminal Street Gang" ("OVC").  The civil complaint named not only OVC, but also 115 individuals[1] and 150 Does, all of whom were alleged to be active members of the gang.  The named defendants included 32 juveniles.  The complaint sought to enjoin OVC, "115 of its members, agents, servants, employees, and all persons acting under, in concert with, for the benefit of, at the direction of, or in association with them or any one of them" from engaging in certain activities – some prohibited activities that are otherwise lawful, while other activities are already prohibited by statute – in an area of the City of Orange totaling approximately 3.78 miles, referred to as the "Safety Zone."

13.    The Safety Zone, which constitutes approximately 16 percent of the

---

[1]    The civil complaint did not contain any specific allegations against any particular individual.

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

City of Orange, consists of three separate territories in the City: (1) the "Downtown Territory," which the complaint alleges is OVC's primary turf and where a majority of the named defendants in the civil complaint live; (2) the "Highland Territory," an area which the civil complaint alleges is claimed by OVC's rival "Orange County Criminals" ("OCC") and that OVC is attempting to take over and control; and (3) the "Hoover/Wilson Territory," which the complaint alleges OVC is also trying to take over and control.

14.    On February 23, 2009, the OCDA filed an Ex Parte Application for Order to Show Cause re Preliminary Injunction ("OSC"). In support of his request, the OCDA filed a memorandum of points and authorities, 87 officer declarations relating to alleged criminal activity by OVC members, including a 91-page declaration by an officer designated as an expert witness, 110 officer declarations relating to alleged criminal activity by alleged juvenile OVC members, 10 "citizen" declarations relating to the gang's alleged nuisance activity, and a chart showing alleged OVC gang convictions and juvenile sustained petitions. On that date, the OCDA also filed ex parte applications for orders to seal the declarations regarding the juveniles, the citizen declarations, and the chart of convictions, all of which the OCSC granted that day.[2]

15.    On or about February 24, 2009, during the early morning hours, police officers from the OPD served the summons, complaint, and supporting papers, totaling at least 500 pages, on numerous homes in the City of Orange and neighboring cities. The package of documents that juveniles and their parents received, including Plaintiff-Petitioner DOE, did not include any of the police declarations regarding the juveniles; these declarations were identified in an

---

[2]    Specifically, the order to seal the citizen declarations prohibited their disclosure to anyone, including the named defendants, until "such time as the Defendants secure an attorney or attorneys to represent them in this action."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1   "Index of Incidents" as sealed.[3]  Similarly, some of the packages served on

2   individual defendants who were between the ages of 18 and 21, including

3   Plaintiff-Petitioners VASQUEZ, LARA, and BASTIDA, did not include police

4   declarations which referred to alleged incidents that occurred when those

5   individuals were juveniles, and were also identified in the Index of Incidents as

6   sealed.

7       16.    The individuals served were confused; they did not know how the

8   papers related to them – the pleadings did not include any specific allegations

9   about anyone, much of the evidence was sealed, and the unsealed evidence

10  relating to any individual was scattered throughout the various police officer

11  declarations  – or what, if anything, was required of them.  As news spread

12  throughout the community about the service of these papers, neighbors began

13  talking, organizing, and researching.  They learned that some packets included an

14  Order to Show Cause re Preliminary Injunction, which indicated that a hearing on

15  the OSC was scheduled for March 27, 2009 and that the defendants could file and

16  serve an opposition to the OSC by March 16, 2009.  Other packets, however, did

17  not include a copy of the order at all; still others contained a copy of the order, but

18  the lines where a date could have been handwritten in were left blank.

19      17.    On or about March 13, 2009, parents of at least four juveniles named

20  in the civil complaint, including Plaintiff-Petitioner DOE's mother, attempted to

21  file with the OCSC various documents on behalf of their children pro per,

22  including fee waivers, requests for extension of time to respond to the complaint

23  and OSC, and peremptory challenges to the judge that was assigned to the case.

24  However, the OCSC clerk refused to accept any paperwork on behalf of their

25

26      [3]    One of the parents telephoned the deputy district attorney assigned to
    prosecute the litigation to request copies of the sealed declarations regarding her
    son. The deputy OCDA advised the parent that he would not give those
27  declarations to her as they were filed under seal and that she would have to bring a
    formal motion with the court to unseal the declarations.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1 children because they had to first file applications to act as guardians ad litem and
2 they could not do so without an attorney.  The parents could not afford to hire an
3 attorney to represent their children, and they would later learn that the OCSC
4 would not appoint attorneys.

5    18.   On or about March 16, 2009, at least seven adult individuals named
6 in the civil complaint, in pro per, filed various documents with the OCSC,
7 including fee waivers, general denials to the complaint, peremptory challenges to
8 the judge, and ex parte applications to continue the March 27 hearing on the OSC.

9    19.   All told, approximately 34 adult individuals filed either an answer or
10 a general denial in response to the civil complaint.  No answers or general denials
11 were filed on behalf of the juvenile defendants.

12    20.   On March 27, 2009, approximately 45 individuals named in the civil
13 complaint, including some juveniles accompanied by their parents and some
14 without their parents, "appeared" pro per at the hearing on the OSC. The OCSC
15 permitted the parents there to speak on behalf of their children, and the parents
16 explained their failed attempts to file documents with the OCSC on behalf of their
17 children.  The OCSC continued hearing on the OSC for some juveniles and adults
18 to April 10, but did not provide those individuals with an opportunity to file a
19 written opposition.

20    21.   At the March 27 hearing on the OSC, the OCSC would not allow the
21 individual defendants to present any facts as to why the preliminary injunction
22 should not be issued against them.  The court limited the individuals to presenting
23 legal arguments only.  None of the individuals present at the March 27 hearing
24 were represented by legal counsel and the OCSC advised them that they did not
25 have a right to a court-appointed attorney in a civil case.

26    22.   On March 27, 2009, the OCSC granted the OCDA's request for a
27 preliminary injunction against approximately 31 adult defendants, some of whom
28

1 appeared at the hearing, others who did not appear at all; and 17 juveniles, some of

2 whom "appeared" at the hearing, others who did not appear at all.  The OCSC

3 continued the hearing on the OSC as to approximately six adults and nine

4 juveniles to April 10, 2009.

5      23.    By April 10, 2009, approximately eleven individuals named in the

6 civil complaint, including two juveniles, secured representation of counsel.  The

7 ACLU Foundation of Southern California ("ACLU") represented five individuals,

8 including one juvenile, pro bono.  Attorney David Haas represented four

9 individuals, including one juvenile and Plaintiff-Petitioner LARA, pro bono.

10 Attorney Roland Rubalcava represented one individual and attorneys Mike Sethi

11 and Sanjay Sobti represented one individual.

12      24.    The ACLU, on behalf of its clients, immediately filed an ex parte

13 application to continue the April 10, 2009 hearing on the OSC  and to seek leave

14 to file written oppositions by April 27, 2009, which the OCSC granted.

15      25.    The ACLU, on behalf of its clients, also moved for an ex parte order

16 to produce any declarations that the OCDA intended to use in support of its

17 request for preliminary injunction and to allow an ACLU attorney to have access

18 to the sealed citizen declarations.  The OCSC granted both of the ACLU's

19 requests.  The next day an ACLU attorney went to the OCDA's office where she

20 was allowed to review the ten "citizen" declarations that the OCDA had submitted

21 as evidence of the existence of a public nuisance in the Safety Zone.  The ACLU

22 attorney was prohibited from obtaining copies of the declarations under the OCSC

23 February 23, 2009 ex parte order and had to review the declarations in the

24 presence of the deputy OCDA and an OCDA investigator.

25      26.    At the April 10, 2009 hearing on the OSC, at least twenty-eight

26 individuals appeared, including ten juveniles.  Eleven of the individuals present

27 were represented by counsel, the remaining individuals appeared pro per.  The

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1    court also continued the hearing on the OSC regarding the eleven represented
2    individuals, including two juveniles, to May 7, 2009, and allowed those
3    individuals to file written oppositions to the OSC by April 27, 2009.  The OCSC
4    granted the OCDA's request for preliminary injunction against seven adults and
5    denied the OCDA's request for preliminary injunction against five adults.  On that
6    date, the OCSC indicated for the first time its concerns about issuing a court order
7    against unrepresented juveniles.  Accordingly, the court continued the hearing on
8    the OSC for the unrepresented juveniles to May 7, 2009, to allow the OCSC and
9    the OCDA the opportunity to research the issue further.

10           27.    On April 27, 2009, the ACLU filed an application for appointment of
11    a guardian ad litem for its juvenile client, filed an answer to the complaint for that
12    juvenile, and filed written oppositions to the OCDA's request for preliminary
13    injunction, including expert declarations and approximately fifteen citizen
14    declarations denying the existence of a public nuisance in the Safety Zone.

15           28.    On April 27, 2009, attorney David Haas filed an application for
16    appointment of a guardian ad litem for his juvenile client, filed answers to the
17    complaint for all of his clients, and joined the ACLU written opposition to the
18    OCDA's request for preliminary injunction.  Attorneys Mike Sethi and Sanjay
19    Sobti also joined the ACLU written opposition.

20           29.    At the May 7, 2009 hearing on the OSC, the OCSC granted the
21    OCDA's request for preliminary injunction against two adults, and two
22    represented minors, and denied the OCDA's request, on the merits, against five
23    adults and one represented minor, and on procedural grounds, against nine
24    unrepresented juveniles.  The OCSD continued the hearing as to one represented
25    adult to March 14, 2009.  The OCSC concluded that juveniles who did not have
26    guardians ad litem and were not represented by counsel could void a court order or

27

28
                                          9

1   judgment.[4]  The OCSC therefore denied the preliminary injunctions against these

2   juveniles.[5]  In response, the OCDA indicated to the court that it intended to

3   formally request the court appoint guardians for the unrepresented juveniles so

4   that they could seek permanent injunctions against them.  Of the eleven

5   individuals represented by counsel, the court issued the preliminary injunction

6   against only four.

7        30.    On or about April 15, 20, and May 6, 2009, the ACLU propounded

8   extensive written discovery directed at the OCDA, totaling almost 1500 separate

9   requests and began noticing the depositions of OCDA witnesses.  Responses to the

10  first round of written discovery were due on or before May 14, 2009.  Other

11  individual defendants responded to discovery propounded by the OCDA.

12       31.    On May 11, 2009, the OCDA filed a request for dismissal against 62

13  individuals, most of whom had responded to the complaint either by filing a

14  general denial or an answer, some of whom had counsel, others who were pro per,

15  and the approximately 26 unrepresented juveniles.  The OCDA did not notify the

16  individual defendants of the dismissal until May 14, 2009, and in fact continued to

17  represent to the ACLU that the litigation was still active against the ACLU's

18  clients.

19  **C.    Default Judgment Against OVC and the Permanent Injunction.**

20       32.    No general denial or answer was filed on behalf of OVC.

21       33.    The civil complaint, which was filed with the OCSC on February 17,

22  2009, alleged that OVC is "an unincorporated association of two or more

23  individuals commonly referred to as a criminal street gang that are joined together

24

25      [4]    In California, a judgment entered against a minor not represented by legal counsel or a guardian ad litem is voidable and can be disaffirmed by the minor.  *Pac. Coast Joint Stock Land Bank of S.F v. Clausen*, 8 Cal. 2d 364 (1937).

26

27      [5]    The court, however, did not vacate its March 27, 2009 Order granting preliminary injunctions against 17 unrepresented juveniles.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1    for social, recreational, profit and other common purposes, and which acts by and

2    through its members, both individually and collectively." The next sentence of the

3    complaint alleged that "OVC is a 'criminal street gang' as defined in Penal Code §

4    186.22(f)."

5          34.    The OCDA identified individual defendant, Patrick Philip DeHerrera,

6    to receive service on behalf of OVC.

7          35.    On February 23, 2009, the OCDA filed an ex parte application for an

8    order to serve OVC pursuant to California Civil Procedure Code section

9    416.40(c). Specifically, the OCDA requested the court issue an order allowing the

10    OCDA to serve Patrick Philip DeHerrera, who the OCDA alleged was an OVC

11    member. The OCDA stated "The Declarations on file prove that PATRICK

12    PHILIP DEHERRERA (aka Patrick Phillip DeHereba, Popeye), is an active

13    participant of Orange Varrio Cypress criminal street gang." Patrick DeHerrera

14    was not given notice of the OCDA's ex parte application.

15          36.    On March 16, 2009, Patrick DeHerrera filed a general denial on his

16    own behalf denying that he is a member of OVC. On May 7, 2009, the OCSC

17    denied the OCDA's request for preliminary injunction against Patrick DeHerrera.

18          37.    On March 30, 2009, and in the days thereafter, the OCDA filed a

19    request for entry of default against OVC and individual defendants, including

20    juvenile defendants, who had not formally responded to the civil complaint by

21    filing a general denial or an answer, although many of the individuals had

22    appeared in the OCSC for one or more of the OSC hearings. The OCDA's request

23    for default was granted as to OVC and some of the adult individuals, and

24    judgment against OVC and others was entered May 14, 2009.

25    **D.**    **The Order**

26          38.    On May 14, 2009, the OCSC signed an Order for Permanent

27    Injunction (the "Order") against OVC, forty-four individuals who had not filed a

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1   formal response to the complaint and had default entered against them, and OVC's

2   "members, participants, agents, associates, servants, employees, aiders, and

3   abettors whose membership, participation, agency, association, service,

4   employment, aid, or abetment is more than nominal, passive, inactive, or purely

5   technical, and all persons acting under, in concert with, for the benefit of, at the

6   direction of, or in association with [OVC] in a manner that is more than nominal,

7   passive, inactive, or purely technical."

8       39.    The provisions of the Order obtained through default against OVC

9   are essentially the same as the relief sought in the original complaint and the

10  OCDA's request for preliminary injunction.

11      40.    The Order imposes restrictions on the individuals subject to it within

12  the Safety Zone, which covers approximately 3.78 square miles, or 16 percent of

13  the entire City of Orange.

14      41.    The Order applies not just to public places, but also to any building

15  "accessible by or to the public," or "in public view," which includes schools,

16  churches, grocery stores, community centers, to name only a few.  Specifically,

17  this area includes at least twelve places of worship, four public schools and a

18  university, a hospital, City Hall and the police department, a train station, two post

19  offices, and countless businesses, including a Walmart, various supermarkets, and

20  the Village, the City's primary shopping mall.

21      42.    Any person subject to the Order, who is alleged to have disobeyed

22  any of the terms, can be criminally prosecuted under Penal Code s§ 166(a)(4).  *See*

23  CAL. PENAL CODE § 166(a)(4) ("[E]very person guilty of any contempt of court . .

24  . is guilty of a misdemeanor.").

25      43.    Section "a" of the Order, entitled "Do Not Associate," broadly

26  prohibits a person subject to the injunction from standing, sitting, walking,

27  driving, bicycling, gathering or appearing "in any public place, any place

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1   accessible to the public, or in public view" with (1) "any person named herein";

2   (2) "anyone you know to be a member, participant, agent associate, servant,

3   employee, aider, or abettor of the Orange Varrio Cypress street gang"; and (3)

4   "anyone you know to be acting under, in concert with, for the benefit of, at the

5   direction of, or in association with the Orange Varrio street gang."

6       44.    Section b of the Order, entitled "Do Not Intimidate," states:

7                 Anywhere in any public place, any place accessible to

8                 the public, or in public view, do not (1) confront,

9                 intimidate, annoy, harass, threaten, challenge, provoke,

10                assault, or batter anyone in the Safety Zone, or (2)

11                remain in the presence of or assist anyone you know in

12                confronting, intimidating, annoying, harassing,

13                threatening, challenging, provoking, assaulting, or

14                battering anyone in the Safety Zone.

15      45.    Several provisions of the Order subject a person to criminal sanctions

16  for "remain[ing] in the presence" of certain classes of individuals.  Specifically,

17  the Order makes it unlawful for a person to remain in the presence of anyone

18  known to be:

19      •    unlawfully under the influence of any drug.  (Order §c(3));

20      •    unlawfully fighting or challenging another person to fight

21          (Order §e(2));

22      •    using offensive words which are inherently likely to provoke

23          an immediate violent reaction (Order §e(6));

24      •    present on any property not open to the public without the

25          voluntary consent of the owner, owner's agent, or the person in

26          lawful possession of the property.  (Order §f(2));

27      •    willfully and maliciously blocking the free passage of any

28

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

person or vehicle on any street, walkway, sidewalk, driveway, alleyway, or other area of public passage.  (Order §g(2));

- maliciously spray painting, marking with marker pens, or otherwise defacing property with graffiti or other inscribed material on any public or private property not belonging to him, her, or you.  (Order §h(2));

- maliciously damaging or destroying real or personal property not belonging to him, her, or you.  (Order §h(4));

- unlawfully possessing spray paint cans, marker pens, knives, screwdrivers, razor blades, nails, or other objects capable of destroying, damaging, or defacing property.  (Order §h(6));

- wearing, displaying, exhibiting, or possessing any clothes or accessories that you know advertise, advance, promote, represent, or refer to the Orange Varrio Cypress criminal street gang.  (Order §j(2));

- unlawfully using, possessing, transporting, furnishing, manufacturing, delivering, dispensing, distributing, or selling any screwdrivers, porcelain spark plug chips, shaved keys, picklocks, wire cutters, dent pullers, slingshots, steel shots, spark plugs, "slim jims," "bump keys," or any instrument or tool listed in Penal Code §466.  (Order §k(2)).

46.   Section j(l), entitled "Do Not Wear Gang Clothing" orders persons subject to the Order not to "wear, display, exhibit or possess any clothes or accessories you know to advertise, advance, promote, represent, or refer to the Orange Varrio Cypress," including clothes that display various enumerated combinations of the words "Orange," "Varrio," Old Towne Orange," and "Cypress" and the color orange.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

47.     Section m imposes a curfew on adults and Section l imposes a curfew on minors.  Section m orders individuals subject to the injunction who are over the age of 18 not to "remain in or upon any public place, vacant lot, or business establishment unless require[d] for a lawful employment; for official school, recreational, educational, charitable, entertainment, cultural, religious or other constitutionally protected expressive activity; volunteering at a charitable institution; for transport to or from the above activities; while on the sidewalk directly in front of the person's dwelling; or for emergencies or interstate travel." For minors served with the injunction, similar terms would apply, with additional exceptions when accompanied by, or acting at the direction of, a parent or guardian.

48.     Sections n(4) and (5) prohibit a person "anywhere in any public place, or any place accessible to the public" from "knowingly remain[ing] in the presence of anyone in possession an open container of an alcoholic beverage," or "knowingly remain in the presence of an open container of an alcoholic beverage."

49.     The Order covers approximately 3.78 square miles, or 16 percent of the entire City of Orange.  For many of those served with the Order, including Plaintiff-Petitioners, the area affected by the Order will include not only their homes, but the homes of most friends and relatives, their schools, their places of employment, the local restaurants they patronize – nearly every place they conduct their daily lives.

E.     **Service of the Order**

50.     In early June 2009, the OCDA, by and through the Defendant-Respondent OPD, began serving the Order on individuals who had been named as individual defendants, including juveniles, in the initial litigation and who had been voluntarily dismissed by the OCDA.  Along with a copy of the Order, the OCDA served a notice stating the following:

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1    YOU ARE HEREBY PUT ON NOTICE THAT ON

2    MAY 14, 2009, JUDGE KAZUHARU MAKINO

3    SIGNED AN ORDER FOR PERMANENT

4    INJUNCTION AGAINST THE ORANGE VARRIO

5    CYPRESS CRIMINAL STREET GANG.

6

7    ALL MEMBERS OF THE GANG ARE SUBJECT TO

8    THE TERMS OF THE PERMANENT INJUNCTION.

9

10   ALL MEMBERS OF THE GANG, WHETHER OR

11   NOT NAMED IN THE ORIGINAL LAWSUIT OR

12   NAMED IN THE ORIGINAL LAWSUIT AND LATER

13   DISMISSED FROM THE LAWSUIT AND

14   PARTICIPANTS, AGENTS, ASSOCIATES,

15   SERVANTS, EMPLOYEES, AIDERS, AND

16   ABETTORS WHOSE MEMBERSHIP,

17   PARTICIPATION, AGENCY, ASSOCIATION,

18   SERVICE, EMPLOYMENT, AID, OR ABETMENT IS

19   MORE THAN NOMINAL, PASSIVE, INACTIVE, OR

20   PURELY TECHNICAL, AND ALL PERSONS

21   ACTING UNDER, IN CONCERT WITH, FOR THE

22   BENEFIT OF, AT THE DIRECTION OF, OR IN

23   ASSOCIATION WITH [OVC] IN A MANNER THAT

24   IS MORE THAN NOMINAL, PASSIVE, INACTIVE,

25   OR PURELY TECHNICAL, ARE SUBJECT TO THE

26   TERMS OF THE PERMANENT GANG INJUNCTION.

27   . . .

28
                                16

1    ALL PERSONS DESCRIBED ABOVE WILL FACE
2    CRIMINAL PROSECUTION PURSUANT TO PENAL
3    CODE SECTION 166(a)(4) FOR ANY WILLFUL
4    VIOLATION OF ANY PROVISION LISTED IN THE
5    PERMANENT GANG INJUNCTION.

6         51.   The notice and service of this Order on individuals named in the
7    original lawsuit but later dismissed from it makes plain the OCDA and the OPD's
8    claim of authority to unilaterally determine, without proof, opposition, or judicial
9    oversight, who is a "member of the gang" and subject to the Order.  Attached as
10   Exhibit A to this Complaint is a true and correct copy of the notice and Order.

11   **F.**    **Enforcement of the Order**

12        52.   Plaintiff-Petitioners are informed and believe that since June 2009,
13   when the OPD began serving the Order, the OPD has arrested a number of
14   individuals named in the original lawsuit but later dismissed for allegedly
15   violating the Order.

16        53.   Plaintiff-Petitioners are informed and believe that on or about July 29,
17   2009, at approximately 12:30 p.m., the OPD arrested Plaintiff-Petitioner
18   VASQUEZ'S 17-year-old brother, who was named in the original litigation,
19   voluntarily dismissed by the OCDA, and later served with the Order, for walking
20   home from summer school with another boy who was a neighbor and friend.  The
21   boy lives and goes to school in the Safety Zone.  He is accused of associating with
22   a "known associate" of OVC in violation of the Order.

23        54.   Plaintiff-Petitioners are informed and believe that on or about August
24   1, 2009, the OPD arrested another 17-year-old boy, who was named in the original
25   litigation, voluntarily dismissed by OCDA, and later served with the Order, for
26   sitting on the steps of his apartment complex with a friend.  The boy lives in the
27   Safety Zone.  He is also accused of associating with a "known associate" of OVC

28

17

1    in violation of the Order.  The "known associate" of OVC is alleged to be

2    Plaintiff-Petitioner BASTIDA, who was voluntarily dismissed by the OCDA from

3    the original litigation.

4         55.    Plaintiff-Petitioners are informed and believe that in mid-August,

5    2009, at approximately 1:00 p.m., the OPD arrested an 18-year-old male, who was

6    named in the original litigation, voluntarily dismissed by OCDA, and later served

7    with the Order.  The male, who lives in the Safety Zone, was the passenger of a car

8    driven by a 22-year-old female, who also lives in the Safety Zone and who was

9    named in the original litigation, voluntarily dismissed by OCDA, but has not yet

10   been served with the Order.  They were on their way to eat pizza and had just

11   parked in the parking lot of the restaurant when police arrested the male.  He is

12   accused of associating with a "known associate" of OVC in violation of the Order.

13        56.    Plaintiff-Petitioners are informed and believe that on or about August

14   27, 2009, at approximately 5:00 p.m., OPD arrested two male juveniles, ages 17

15   and 15, both of whom had been named in the original litigation, voluntarily

16   dismissed, and served with the Order.  The boys were passengers of a car driven

17   by a 22-year-old female, who also lives in the Safety Zone and who was named in

18   the original litigation, voluntarily dismissed by OCDA, but has not yet been served

19   with the Order.  The female had stopped at a gas station in the Safety Zone to get

20   gas when the police arrested the two juveniles.  They are accused of associating

21   with "known associates" of OVC in violation of the Order.

22        57.    Plaintiff-Petitioners are informed and believe that on September 10,

23   2009, at approximately 4:30 p.m., OPD arrested a 21-year-old male who was

24   named in the original litigation, voluntarily dismissed by the OCDA, and later

25   served with the Order.  The male, who lives in the Safety Zone was visiting a

26   friend, who also lives in the Safety Zone.  They were in the friend's garage and the

27   21-year-old male was drinking a beer.  The garage door was open and in public

28

1  view.  He is accused of being in possession of alcohol in violation of the Order.

2  <center>**PARTIES**</center>

3  **A.    Plaintiff-Petitioner Manuel Vasquez**

4  58.    Plaintiff-Petitioner MANUEL VASQUEZ ("Plaintiff VASQUEZ" or

5  "Mr. VASQUEZ") is and at all relevant times was a resident of Orange County

6  California, residing in the City of Orange within the geographical area referred to

7  in the civil complaint as the Safety Zone.  He is nineteen years old.

8  59.    Mr. VASQUEZ was named as a defendant in the public nuisance

9  abatement action filed by OCDA on February 17, 2009 and on or about February

10  24, 2009, OPD served Mr. VASQUEZ with approximately 500 pages of

11  documents, including the summons and the civil complaint.  Mr. VASQUEZ was

12  not served with the declarations referred to in the Index of Incidents as being filed

13  under seal and relating to him.

14  60.    Because he could not afford to hire an attorney to represent him, Mr.

15  VASQUEZ, in pro per, filed a general denial to the civil complaint on March 16,

16  2009, filed a declaration on April 3, 2009 denying that he was a member of any

17  criminal street gang, and appeared at various court hearings to defend himself

18  against the OCDA's allegations.

19  61.    On May 12, 2009, the OCDA voluntarily dismissed the nuisance

20  abatement action against Mr. VASQUEZ; but, in about June 2009, the OPD

21  personally served Mr. VASQUEZ with a copy of the Order, which OCDA

22  obtained via default against OVC, advising that Mr. VASQUEZ is subject to the

23  terms of the Order whether or not he was named in the original lawsuit and later

24  dismissed.  Mr. VASQUEZ fears being arrested for conducting his day-to-day

25  activities and has significantly curtailed his activities as a result.

26  62.    Mr. VASQUEZ has suffered and continues to suffer great harm by

27  being subject to the terms of the Order.  He lives, works, and shops in the Safety

28

<center>19

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS</center>

1  Zone.  He feels like a prisoner in his own home, although he is not on probation or

2  parole, because he fears being targeted by the police and accused of violating the

3  terms of the Order for engaging in routine, day-to-day activities.  One of Mr.

4  VASQUEZ's brothers, whom he lives with, was dismissed from the original

5  litigation and then served with the Order.  Mr. VASQUEZ is afraid of going

6  anywhere with his brother, because he fears being stopped, searched, and arrested

7  if they are seen together or arrive or leave home at the same time.

8  **B.     Plaintiff-Petitioner Miguel Bernal Lara**

9  63.    Plaintiff-Petitioner MIGUEL BERNAL LARA ("Plaintiff LARA" or

10  "Mr. LARA") is and at all relevant times was a resident of Orange County

11  California, residing in the City of Orange.  He is twenty years old.

12  64.    Plaintiff LARA was named as a defendant in the public nuisance

13  abatement action filed by the OCDA on February 17, 2009 and on or about

14  February 24, 2009, the OPD served Plaintiff LARA with approximately 500 pages

15  of documents, including the summons and the civil complaint.  LARA was not

16  served with the declarations referred to in the Index of Incidents as being filed

17  under seal and relating to him.

18  65.    Because he could not afford an attorney to represent him, Mr. LARA

19  appeared at various court hearings, in pro per, to defend himself against the

20  OCDA's allegations.  Eventually, Mr. LARA was able to obtain the services of an

21  attorney, David Haas, to represent him on a pro bono basis.  On or about April 27,

22  2009, Mr. LARA, by and through his attorney, filed an answer to the civil

23  complaint and filed a motion to join the memorandum of points and authorities

24  and expert declarations filed by the ACLU on behalf of their clients, in opposition

25  to the OCDA's OSC.

26  66.    On May 12, 2009, the OCDA voluntarily dismissed the nuisance

27  abatement action against Mr. LARA; but, in about June 2009, the OPD personally

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

served Mr. LARA with a copy of the Order, which OCDA obtained via default against OVC, advising that Mr. LARA is subject to the terms of the Order whether or not he was named in the original lawsuit and later dismissed. Mr. LARA fears being arrested for conducting his day-to-day activities and has significantly curtailed his activities as a result.

67. Although Mr. LARA no longer lives in the Safety Zone, he has suffered and continues to suffer great harm from being subject to the terms of the Order. Mr. LARA has participated in several political rallies, marches, and demonstrations, opposing the OCDA's actions and methods in seeking a gang injunction in the City of Orange and wishes to continue  such activity, but will not do so because he fears being arrested. Mr. LARA, who lives in the City of Orange, is afraid to attend his City's council meetings, because they are held at city hall, which is located in the Safety Zone, and he fears that he will be arrested for challenging the OCDA and OPD's policies and practices or if someone the police believe to be a gang member is also in attendance. Mr. LARA also takes an alternate route to work to avoid having to drive through the Safety Zone and being seen in the vicinity of anyone alleged to be an OVC member.

**C.      Plaintiff-Petitioner Gabriel Bastida**

68. Plaintiff-Petitioner GABRIEL BASTIDA ("Plaintiff BASTIDA" or "Mr. BASTIDA") is and at all relevant times was a resident of Orange County California, residing in the City of Santa Ana. He is eighteen years old.

69. Plaintiff BASTIDA was named as a defendant in the public nuisance abatement action filed by the OCDA on February 17, 2009 and on or about February 24, 2009, the OPD served Plaintiff BASTIDA with approximately 500 pages of documents, including the summons and the civil complaint. BASTIDA was not served with the declarations referred to in the Index of Incidents as being filed under seal and relating to him.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

70.   Because Mr. BASTIDA could not afford an attorney to represent him, he appeared at various court hearings, in pro per, with the assistance of his mother, to defend himself against the OCDA's allegations.  Although Mr. BASTIDA filed a Peremptory Challenge under California Civil Procedure Code section 170.6 as to the judge originally assigned, as well as a declaration denying that he is a gang member, he was not aware that he had to formally respond to the civil complaint, or how he would do that.  He therefore did not file a general denial, an answer, or any other document formally responding to the civil complaint.

71.   On or about April 27, 2009, the OCDA filed a request for entry of default against Mr. BASTIDA, which the clerk of the OCSC entered that same day.  On or about May 12, 2009, Mr. BASTIDA was served with the OCDA's request for court judgment against him, and on May 15, 2009, Mr. BASTIDA, with his mother's help, filed a request to vacate the judgment under default.  On or about July 10, 2009, the court granted Mr. BASTIDA's request, set aside the default, and set a case management conference.

72.   On July 16, 2009, the OCDA dismissed the nuisance abatement action against Mr. BASTIDA;  but, on or about August 13, 2009, the OPD personally served Mr. BASTIDA with a May 14, 2009 Order for Permanent Injunction, which the OCDA obtained via default against the alleged gang OVC, advising that Mr. BASTIDA is subject to the terms of the Order whether or not he was named in the original lawsuit and later dismissed.  Mr. BASTIDA fears being arrested for conducting his day-to-day activities and has significantly curtailed his activities as a result.

73.   Mr. BASTIDA has suffered and continues to suffer great harm by being subject to the terms of the Order.  Although Plaintiff BASTIDA no longer lives in the Safety Zone, his close relatives live in the Safety Zone.  He used to visit his relatives regularly, but no longer does for fear of being stopped and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1  arrested by the police for allegedly violating the Order.  One of Mr. BASTIDA's

2  brothers, a juvenile, whom he lives with, was dismissed from the original litigation

3  and then served with the Order.  Mr. BASTIDA is afraid to go to visit his relatives

4  with his brother, which they usually did together, because he fears being stopped,

5  searched, and arrested if they go to his relative's house or arrive there at the same

6  time.

7  **D.    Plaintiff-Petitioner James Doe**

8         74.    Plaintiff-Petitioner JAMES DOE, a minor, ("Plaintiff DOE" or

9  "DOE") is and at all relevant times was a resident of Orange County California.

10  Plaintiff-Petitioner DOE bring this litigation, by and through his next friend,

11  JANE DOE, his mother.

12         75.    Plaintiff DOE was named as a defendant in the public nuisance

13  abatement action filed by OCDA on February 17, 2009 and on or about February

14  24, 2009, OPD served Plaintiff DOE and his mother, JANE DOE with

15  approximately 500 pages of documents, including the summons and the civil

16  complaint.  Neither DOE nor JANE DOE was served with the declarations referred

17  to in the Index of Incidents as being filed under seal and relating to him.

18         76.    On or about March 13, 2009, JANE DOE, along with other parents of

19  juveniles named in the civil complaint, attempted to file various documents on

20  behalf of DOE with the OCSC, including a fee waiver, a request for extension of

21  time to respond to the complaint and OSC, and a peremptory challenge to the

22  judge that was assigned to the case.  However, the OCSC clerk refused to accept

23  any paperwork on behalf of DOE, or any other juvenile.  The clerk of OCSC

24  advised JANE DOE, and other parents, that they would first have to file an

25  application to act as their children's guardians ad litem, but to do so they would

26  have to hire an attorney.  DOE's mother could not afford to hire an attorney to

27  represent DOE.

28

23

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

77.    Although JAMES DOE could not file a formal response to the civil complaint because he could appear pro per, did not have an attorney, and could not afford to hire one, he and his mother appeared at various court hearings to defend himself against OCDA's allegations.

78.    On May 12, 2009, the OCDA voluntarily dismissed the nuisance action against DOE; but, in or about June 2009, the OPD personally served DOE and his mother with a May 14, 2009 Order for Permanent Injunction, which OCDA obtained via default against the alleged gang OVC, advising that Plaintiff DOE is subject to the terms of the Order whether or not he was named in the original lawsuit and later dismissed.  Plaintiff DOE fears being arrested for conducting his day-to-day activities and has significantly curtailed his activities as a result.

79.    Plaintiff DOE has suffered and continues to suffer great harm by being subject to the terms of the Order.  Although Plaintiff DOE does not live in the Safety Zone, his grandmother and his aunt do.  He used to visit his grandmother and his aunt regularly, but no longer does for fear of being stopped and arrested by the police for allegedly violating the Order.  One of DOE's brothers, whom he lives with, was named in the original litigation, later dismissed and then served with the Order.  DOE is afraid that he will be stopped, searched, and arrested if he and his brother go to his grandmother's house together or arrive there at the same time.

**E.    Defendant-Respondents**

80.    Defendant-Respondent TONY RACKAUKAS, is the District Attorney for the County of Orange ("Defendant OCDA" or "OCDA").  As such, he is responsible for overseeing and managing the Orange County District Attorney's office.  Defendant RACKAUKAS is sued in his official capacity.  In his official capacity, he is the legal custodian of Plaintiff-Petitioners, and others

1  similarly situated.

2       81.   Defendant-Respondent ROBERT GUSTAFSON, is the Chief of

3  Police for the City of Orange Police Department ("Defendant OPD").  As such, he

4  is responsible for overseeing and managing the Orange Police Department.

5  Defendant GUSTAFSON is sued in his official capacity.  In his official capacity,

6  he is the legal custodian of Plaintiff-Petitioners, and others similarly situated.

7       82.   The true names and capacities, whether individual, corporate,

8  associate, representative or otherwise, of the defendant-respondents identified

9  herein as Does 1 through 10, inclusive, are unknown to Plaintiff-Petitioners, who

10  therefore sue these defendants by said fictitious names.  Plaintiff-Petitioners will

11  amend this complaint to allege the true names and capacities of Does 1 through 10

12  when they have been ascertained.  Does 1 through 10 are in some manner legally

13  responsible for the wrongs and injuries alleged herein.

14       83.   At all times mentioned in this Complaint, unless otherwise alleged,

15  each Defendant-Respondent was the agent, employee, and/or co-conspirator of

16  every other Defendant-Respondent, and in doing the acts alleged in this

17  Complaint, was acting within the course, scope, and authority of that agency or

18  employment, and in furtherance of the conspiracy to violate Plaintiff-Petitioners'

19  constitutional rights, with the knowledge and consent of each of the other

20  Defendant-Respondents.

21                      **CLASS ACTION ALLEGATIONS**

22       84.   Plaintiff-Petitioners VASQUEZ, LARA, BASTIDA and DOE bring

23  this action on their own behalf and all other persons similarly-situated, pursuant to

24  Federal Rules of Civil Procedure 23(a) and 23(b)(2), or in the alternative, as a

25  representative action pursuant to a procedure analogous to Rules 23(a) and

26  23(b)(2). *See Ali v. Ashcroft*, 346 F.3d 873, 891 (9th Cir. 2003), overruled on

27  other grounds, *Jama v. ICE*, 543 U.S. 335 (2005) (allowing class action habeas

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1    petition).  Plaintiff-Petitioners bring this action individually and on behalf of a
2    class defined as:

3              All persons named as individual defendants in *People v.*
4              *Orange Varrio Cypress Criminal Street Gang, et al.*,
5              Orange County Superior Court, 30-2009 00118739,
6              dated February 17, 2009, who appeared or attempted to
7              appear, either pro per or through an attorney, in the
8              Orange County Superior Court to defend themselves and
9              were voluntarily dismissed by the Orange County
10             District Attorney's office and have now been served or
11             will be served with the Order for Permanent Injunction
12             against "Orange Varrio Cypress Criminal Street Gang"
13             dated May 14, 2009, and therefore subject to its
14             provisions, but do not have contempt proceedings
15             currently pending against them.

16        85.    Additionally, Plaintiff-Petitioner JAMES DOE, brings this action
17    individually and on behalf of the following sub-class:

18             All juveniles named as individual defendants in *People*
19             *v. Orange Varrio Cypress Criminal Street Gang, et al.*,
20             Orange County Superior Court, 30-2009 00118739,
21             dated February 17, 2009, who attempted to appear in the
22             Orange County Superior Court, either individually or
23             through a parent, but could not have a guardian ad litem
24             appointed because neither the juveniles nor their parents
25             could afford an attorney and therefore could not and did
26             not formally appear; were voluntarily dismissed by the
27             Orange County District Attorney's office and have now

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1    been served or will be served with the Order for

2    Permanent Injunction against "Orange Varrio Cypress

3    Criminal Street Gang" dated May 14, 2009, and

4    therefore subject to its provisions, but do not have

5    contempt proceedings currently pending against them.

6      86.  The proposed class meets the requirements of Fed. R. Civ. Pro.

7    23(a)(1).  At least 60 individuals were, like Plaintiff-Petitioners, named as

8    individual defendants in *People v. Orange Varrio Cypress Criminal Street Gang*,

9    appeared or attempted to appear in the case, thereby being willing and available to

10   defend against allegations in the complaint, and were ultimately voluntarily

11   dismissed by OCDA.  To date, Plaintiff-Petitioners' counsel is aware of more than

12   20 other class members in this District who, like Plaintiff-Petitioners, have been

13   served with the Order and thereby subjected to its terms.  Plaintiff-Petitioners

14   anticipate that Defendant-Respondents will subject other individuals similarly

15   situated to Plaintiff-Petitioners to the terms of the Order in the future.  Joinder of

16   all members of this class is therefore impracticable.

17     87.  The identity of the class members is known by Defendant-

18   Respondents and is readily ascertainable from their records.

19     88.  The proposed class meets the requirements of Fed. R. Civ. Pro.

20   23(a)(2).  There are several common questions of law and fact in the action.  These

21   include:  (1) whether being subject to the terms of the Order deprives an individual

22   of a liberty or property interest; (2) whether the individuals who were previously

23   dismissed as defendants from the original litigation have been denied adequate

24   procedural protections by now being subject to the terms of the Order in violation

25   of the Due Process Clause.

26     89.  The proposed class meets the requirements of Fed. R. Civ. Pro.

27   23(a)(3).  The claims of the named Plaintiff-Petitioner are typical of the claims of

28

<div align="center">27</div>

the proposed class.  Like the proposed class members, the named Plaintiff-Petitioners are subject to the terms of the Order without having been afforded notice and an opportunity to be heard as required by the Due Process Clause. Plaintiff-Petitioners anticipate that Defendant-Respondents will serve the Order in the future on other proposed class members, thereby subjecting them to the terms of the Order without due process.

90.    The proposed class meets the requirements of Fed. R. Civ. Pro. 23(a)(4).  The named Plaintiff-Petitioners will fairly and adequately represent the interests of all members of the proposed class because they seek relief identical to the relief sought by all class members, and because they have no interests adverse to other class members.  Moreover, named Plaintiff-Petitioners are represented by pro bono counsel from the ACLU.  The ACLU and their attorneys have extensive civil rights litigation experience and broad experience litigating class actions.

91.    The proposed class meets the requirements of Fed. R. Civ. Pro. 23(b)(2).  Defendant-Respondents have acted on grounds generally applicable to the class through their policy and practice of subjecting individuals who were named as defendants in the *People v. Orange Varrio Cypress Criminal Street Gang*, whom the OCDA voluntarily dismissed, to the Order without providing due process of law, making class-wide declaratory and injunctive relief appropriate.

## **LEGAL BACKGROUND**

92.    This case involves the egregious abuse of government power and denial of due process by the Defendant-Respondent OCDA and Defendant-Respondent OPD.  The OCDA apparently intended to pursue the public nuisance abatement action against Plaintiff-Petitioners and others similarly situated, as long as it was uncontested.  Indeed, as soon as some of the named individuals, including Plaintiff-Petitioners, attempted to contest, the OCDA dismissed the suit against them, thereby preempting any judicial determination as to whether these

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1   individuals should be subject to the permanent injunction. The OCDA and OPD

2   then turned around and served them with a permanent injunction obtained via

3   default against the gang. These individuals are now subject to the terms of the

4   Order without the OCDA and OPD having to prove its case against them.

5        93.    Plaintiff-Petitioners, and other similarly situated, have a liberty

6   interest in their fundamental rights of free speech, freedom from vague and

7   arbitrary laws, and free movement, all of which are guaranteed by the state and

8   federal constitutions. The Order, when served on Plaintiff-Petitioners, and others

9   similarly situated, deprives them of these fundamental rights. The Order

10   proscribes otherwise legal acts and, in effect, creates a personal criminal code for

11   each individual who Defendant-Respondent decides, in their own unfettered

12   discretion, is subject to its terms. The deprivation of liberty interests thus stems

13   from the Order and the Defendant-Respondents' service of it on Plaintiff-

14   Petitioners, and others similarly situated, who now risk contempt prosecutions for

15   engaging in lawful and socially desirable conduct.

16        94.    The Order, moreover, subjects Plaintiff-Petitioners, and others

17   similarly situated, to conditions that significantly confine and restrain their

18   freedom and that are not otherwise shared by the public generally. Such

19   restrictions on individual liberty subject a person to "custody" although there is no

20   physical confinement. *See Jones v. Cunningham*, 371 U.S. 236, 239 (1963); *id.* at

21   242 ("It is not relevant that conditions and restrictions such as these may be

22   desirable and important parts of the rehabilitative process; what matters is that

23   they significantly restrain petitioner's liberty to do those things which in this

24   country free men are entitled to do."); *see also In re Petersen*, 331 P.2d 24 (Cal.

25   1958) (holding that a bailee is constructively in custody because the purpose of

26   bail is to assure that he will attend the court when his presence is required). Thus,

27   Defendant-Respondents have custody of Plaintiff-Petitioners, and other similarly

28

1   situated, in violation of federal constitutional law.

2        95.   A fundamental aspect of due process is that a person deprived of a

3   liberty interest be given an opportunity to be heard "at a meaningful time and in a

4   meaningful manner." *Brewster v. Board of Educ. of the Lynwood Unified Sch.*

5   *Dist.*, 149 F.3d 971, 984 (9th Cir. 1998). Indeed, "the root requirement of the Due

6   Process Clause is that an individual be given an opportunity for a hearing *before*

7   he is deprived of any significant protected interest." *Cleveland Bd. of Educ. v.*

8   *Loudermill*, 470 U.S. 532, 542 (1985). Such a hearing helps ensure fairness for

9   the individual and serves to protect citizens from arbitrary government

10  encroachment.

11       96.   The OCDA's and the OPD's dismiss-and-serve strategy has

12  thoroughly subverted the judicial process and denied Plaintiff-Petitioners and

13  others similarly situated their constitutional right to due process. As a result of the

14  OCDA's actions, the individuals dismissed from the suit not only have been

15  subjected to an injunction without any opportunity to oppose it, but they now find

16  themselves in the constitutionally untenable position of abiding by an injunction

17  that no court has determined to be lawful or justified as applied to them and

18  curtailing their daily activities and the lawful exercise of their freedoms or

19  continuing to live their lives and exercise their freedoms and risk arrest and

20  incarceration for violating the injunction. The opportunity to defend against

21  criminal contempt proceedings, following arrest and incarceration, is a pale

22  substitute for the opportunity, which the OCDA has eliminated, to defend against a

23  civil suit and to oppose issuance of the injunction in the first instance. Indeed, the

24  opportunity to defend in criminal contempt proceedings comes too late to prevent

25  precious constitutional freedoms and interests from being affected by this

26  unjustified and unlawful injunction.

27  ///

28

30

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CAUSES OF ACTION**

### FIRST CLAIM FOR RELIEF

[Against Each and Every Defendant]

(42 U.S.C. § 1983 – Procedural Due Process

Under U.S. Const. Amend XIV)

97.     Plaintiff-Petitioners reallege and replead all the allegations of the preceding paragraphs of this Complaint and incorporate them here by reference.

98.     Defendant-Respondents acted under color of law.

99.     The acts of Defendant-Respondents deprived Plaintiffs and those similarly situated of their rights under the Fourteenth Amendment to the United States Constitution.

100.    Specifically, by subjecting Plaintiff-Petitioners and those similarly situated, or causing them to be subjected, to the terms of the Order, Defendant-Respondents deprived Plaintiff-Petitioners and those similarly situated of their constitutionally protected liberty or property interests without adequate procedural protections.

### **SECOND CLAIM FOR RELIEF**

[Against Each and Every Defendant]

(Procedural Due Process Under Cal. Const. art. I, § 7)

101.    Plaintiffs reallege and replead all the allegations of the preceding paragraphs of this Complaint and incorporate them here by reference.

102.    By subjecting Plaintiff-Petitioners and those similarly situated, or causing them to be subject to, the terms of the Order, Defendant-Respondents deprived Plaintiff-Petitioners and those similarly situated of their constitutionally protected liberty or property interests without adequate procedural protections.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

103.   Defendant-Respondents' conduct deprived Plaintiff-Petitioners and those similarly situated of their liberty without due process of law in violation of Article I, section 7(a) of the California Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Petitioners respectfully request that this Court enter judgment in their favor as follows:

    a.      Assume jurisdiction of this matter;

    b.      Temporarily enjoin Defendant-Respondents and their directors, officers, agents, and employees from enforcing the terms of Order against Plaintiff-Petitioners and those similarly situated without first providing them with a full constitutionally-adequate hearing;

    c.      Certify a class under Fed. R. Civ. Pro. 23 (or other analogous procedures) as described above, pursuant to a motion for class certification to be filed shortly;

    d.      Appoint Plaintiff-Petitioners as Class Representatives;

    e.      Appoint Plaintiff-Petitioners counsel as Class Counsel;

    f.      Declare that the actions, policies and practices of Defendant-Respondents described above constitute violations of federal and state constitutional law;

    g.      Permanently enjoin Defendant-Respondents and their directors, officers, agents, and employees from enforcing the terms of Order against Plaintiff-Petitioners and those similarly situated without first providing them with a full constitutionally-adequate hearing;

    h.      Grant a writ of habeas corpus and order that Plaintiff-Petitioners and those similarly situated are entitled to a constitutionally-adequate hearing before Defendant-Respondents may significantly confine and restrain the freedom of Plaintiff-Petitioners or others similarly situated;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

1    i.    Award Plaintiff-Petitioners their fees, expenses, costs, and other

2    disbursements associated with the filing and maintenance of this action, including

3    reasonable attorneys' fees pursuant to any applicable provision of law; and

4    j.    Award such other equitable and further relief as the Court deems just

5    and proper.

6

7    Dated:  September 21, 2009        ACLU FOUNDATION OF SOUTHERN
                                       CALIFORNIA
8

9                                      By: _____
                                           Belinda Escobosa Helzer
10
                                       Attorneys for Plaintiff-Petitioners
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR WRIT OF HABEAS CORPUS

# Exhibit A

# NOTICE

YOU ARE HEREBY PUT ON NOTICE THAT ON MAY 14, 2009, JUDGE KAZUHARU MAKINO SIGNED AN ORDER FOR PERMANENT INJUNCTION AGAINST THE ORANGE VARRIO CYPRESS CRIMINAL STREET GANG.

ALL MEMBERS OF THE GANG ARE SUBJECT TO THE TERMS OF THE PERMANENT INJUNCTION.

ALL MEMBERS OF THE GANG, WHETHER OR NOT NAMED IN THE ORIGINAL LAWSUIT OR NAMED IN THE ORIGINAL LAWSUIT AND LATER DISMISSED FROM THE LAWSUIT AND ALL PARTICIPANTS, AGENTS, ASSOCIATES, SERVANTS, EMPLOYEES, AIDERS AND ABETTORS WHOSE MEMBERSHIP, PARTICIPATION, AGENCY, ASSOCIATION, SERVICE, EMPLOYMENT, AID OR ABETMENT IS MORE THAN NOMINAL, PASSIVE, INACTIVE, OR PURELY TECHNICAL, AND ALL PERSONS ACTING UNDER, IN CONCERT WITH, FOR THE BENEFIT OF, AT THE DIRECTION OF, OR IN ASSOCIATION WITH ORANGE VARRIO CYPRESS CRIMINAL STREET GANG IN ANY MANNER THAT IS MORE THAN NOMINAL, PASSIVE, INACTIVE, OR PURELY TECHNICAL, ARE SUBJECT TO THE TERMS OF THE PERMANENT GANG INJUNCTION.

(*PEOPLE EX REL. GALLO V ACUNA* (1997) 14 CAL.4[TH] 1090, 1125, *BERGER V SUPERIOR COURT* (1917) 175 CAL. 719, 721, *IN RE BERRY* (1968) 68 CAL.2D 137, 155-156, *PEOPLE EX REL. TOTTEN V COLONIA CHIQUES* (2007) 156 CAL.APP.4[TH] 31, 45, AND PEOPLE V. CONRAD (1997) 55 CAL.APP.4[TH] 896, 902 )

**ALL PERSON DESCRIBED ABOVE WILL FACE CRIMINAL PROSECUTION PURSUANT TO PENAL CODE SECTION 166(a)(4) FOR ANY WILLFUL VIOLATION OF ANY PROVISION LISTED IN THE PERMANENT GANG INJUNCTION.**

# NOTICE

# AVISO

LE PONEN POR ESTE MEDIO EN EL AVISO QUE ESTE 14 DE MAYO DE 2009, JUEZ QUE KAZUHARU MAKINO FIRMÓ UNA ORDEN PARA LA PRESCRIPCIÓN PERMANENTE CONTRA LA CUADRILLA CRIMINAL DE LA CALLE DEL CIPRÉS ANARANJADO DE VARRIO.

TODOS LOS MIEMBROS DE LA CUADRILLA ESTÁN CONFORME A LOS TÉRMINOS DE LA PRESCRIPCIÓN PERMANENTE.

TODOS LOS MIEMBROS DE LA CUADRILLA, SI O NO NOMBRADO EN EL PLEITO ORIGINAL O NOMBRADO EN EL PLEITO ORIGINAL Y DESPEDIDO MÁS ADELANTE DEL PLEITO Y DE TODOS LOS PARTICIPANTES, LOS AGENTES, LOS ASOCIADOS, LOS CRIADOS, LOS EMPLEADOS, LOS AIDERS Y EL CÓMPLICE QUE CALIDAD DE MIEMBRO, PARTICIPACIÓN, AGENCIA, ASOCIACIÓN, SERVICIO, EMPLEO, AYUDA O ES ABETMENT MÁS QUE NOMINAL, PASIVO, INACTIVO, O PURAMENTE TÉCNICO Y TODAS LAS PERSONAS QUE ACTÚAN DEBAJO, EN CONCIERTO CON, EN.BENEFICIO DE, EN LA DIRECCIÓN, O EN ASOCIACIÓN CON DE LA CUADRILLA CRIMINAL DE LA CALLE DEL CIPRÉS ANARANJADO DE VARRIO DE CUALQUIER MANERA QUE SEA MÁS QUE NOMINAL, PASIVOS, INACTIVOS, O PURAMENTE TÉCNICOS ESTÁN CONFORME A LOS TÉRMINOS DE LA PRESCRIPCIÓN PERMANENTE DE LA CUADRILLA.

(*GENTE REL EX. GALLO V ACUNA* (1997) 14 CAL.4[TH] 1090, 1125, *CORTE SUPERIOR DE BERGER V* (1917) 175 CALORÍAS. 719, 721, *EN BAYA RE* (1968) 68 CAL.2D 137, 155-156, *GENTE REL EX. TOTTEN V COLONIA CHIQUES* (2007) 156 CAL.APP.4[TH] 31, 45, Y GENTE V. CONRADO (1997) 55 CAL.APP.4[TH] 896, 902)

**TODA LA PERSONA DESCRITA ARRIBA HARÁ FRENTE AL PROCESAMIENTO CRIMINAL CONFORME A LA SECCIÓN PENAL 166 (a) (4) del CÓDIGO PARA CUALQUIER VIOLACIÓN VOLUNTARIOSA DE CUALQUIER PROIVISON ENUMERADO EN LA PRESCRIPCIÓN PERMANENTE de la CUADRILLA.**

# AVISO

COPY

1

2
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

3

4
MAY 14 2009

5
ALAN CARLSON, Clerk of the Court

6
BY  M. VARELA

7

8
## SUPERIOR COURT OF CALIFORNIA

9
## FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11
THE PEOPLE OF THE STATE OF CALIFORNIA,

12
Plaintiff,

13

14
v.

15
ORANGE   VARRIO   CYPRESS   CRIMINAL

16
STREET GANG (an unincorporated association),
STEVE ABAD (aka Steven Abad), IVAN ABAD

17
(aka   Ivan   Dector   Abad,   Shadey,   Shady),

18
ALEXANDER CISNEROS AGUIRRE (aka Alex
Garcia, Alejandro Aguirre, Alex Aguirre, Alex

19
Cisneros Aguirre, Pablo Gonzales, Cartoon), JOE

20
ANTHONY ALVARADO (aka Philip Estrada,
Joseph Alvarado, Felipe DeJesus Estrada, Joe,

21
Stranger), MIGUEL ALVIDREZ (aka Miguel

22
Aolvidrez, Sleeper, Sleepy), MONIQUE AMBER
ALVARADO, WILLIAM ARANDA (aka William

23
Chavez Aranda, Willie Aranda, William Chavez

24
Aranda, William Chavez, Willy Chavez Aranda,
William Aranda Jr., William Chavez Aranda Jr.,

25
Casper), ERIKA VANESSA ARANDA (aka Erika

26
Mariscal Aranda, Erika Vanessa Arando, Erika
Vanessa   Miranda,   Gumby,   Ms.   Smokey),

27
RAYMOND   MARTIN   ATENCIO   (aka   Ray

28
Atencio,   Raymond   Martin   Attencio,   Reymond

Case No. 30-2009-00118739

[PROPOSED] ORDER FOR
PERMANENT INJUNCTION

1

| | |
|---|---|
| 1 | Martin Atencio, Rey Atencio, Reymond Martin |
| 2 | Atencio, IV, Raymond Martin Atencio, IV, Raymond Atencio, Ray Ray, Rey Rey, Demon), JESUS JOSE |
| 3 | AVILA (aka Jesus Avila, Jesus Avila Gonzalez, |
| 4 | Chewy), JAVIER AVILA (aka Jesus Avila, Javier Avila Gonzalez, Javi, Javy, Smokey), JOSE AYALA |
| 5 | (aka Jose Ayala, Jr., Shadow), JOSEPH ANTHONY |
| 6 | BAEZ (aka Joseph Anthony Bael, Spooky, Spooks, Spookster), RANDY BASTIDA (aka Randy William |
| 7 | Bastida), GABRIEL BASTIDA (aka Gabriel Nasario |
| 8 | Bastida), JUAN BENITEZ, JR. (aka Juan), WILLIAM RYAN BOOKER (aka Ryan Booker, |
| 9 | Stalker), JOSHUA ALLAN BRANCH (aka Josh |
| 10 | Allen Branch, Joshua Branch, Joshua A. Branch, Joshua Allen Branch, Cricket), ANDREW |
| 11 | CALDERON (aka Andrew Michael Calderon, Kid), |
| 12 | BRIAN JAVIER CAMACHO, JAVIER CAMACHO (aka Brian Gutierrez, Laughing Boy), |
| 13 | LAURO CAMPOS (aka Laura Campos, Lauro |
| 14 | Cumpos, Lauro Campos-Rosas, Goofy, Midnight), JESUS COMEA CANO (aka Jesus Cano Correa, |
| 15 | Jesus Cantu Correa, Chewee, Chewy, Chuy), |
| 16 | CELERINO CARBAJAL (aka Whisper), ANGEL ANTHONY CERVANTES (aka Playboy), |
| 17 | ENRIQUE OCHOA CERVANTES (aka Ricky |
| 18 | Cervantes, Soldier Ricky), RENE RAYMOND CHAVEZ (aka Indio), ANNA SILVIA COOPER |
| 19 | (aka Ana Silvia Nogales, Anna Silvia Nogales, Ms. |
| 20 | Shaggy), MICHAEL GALBRAITH COOPER (aka Michael Galbrith, Mike Cooper, Michael Ortiz, |
| 21 | Michael Cooper, Jesse Soto, Cartoon, Shaggy, |
| 22 | Smokey), MARTIN SALVADOR CORNEJO (aka Lil Martin, Rabbit), RUBEN CANDILLARIA |
| 23 | CRUZ (aka Reuben Cruz, Ruben Cruz, Ruben |
| 24 | Candellarria Cruz, Pirate), MIGUEL ALAHONDRO CRUZ, LOUIS MIGUEL DEHERRERA (aka Louie, |
| 25 | Tiger), ROY DAVID DEHERRERA (aka Patrick |
| 26 | Phillip DeHerrera, Pat DeHerrera, Patrick Philip DeHerrea, Patric Philip DeHerrera, Patrick Philip |
| 27 | Herra, P. Herrera, Roy DeHerrera, Patrick |
| 28 | DeHerrera, Patrick Phillip Herrera, Patrick P. |

2

DeHerrera, Patrick Philip Herrera) ,PATRICK PHILIP DEHERRERA (aka Patrick Phillip DeHerceba, Patarick Philip DeHerrea, Popeye), HECTOR DELATORRE JR. (aka Hector Junior Delatorre, Matthew Montoya, Scrap, Scraps, Skrap), JAVIER ESPARZA (aka John David Esparz, Gizmo), HUGO ADRIAN ESTEVES (aka Blaze), CHRISTIAN MOISES GALINDO (aka Christian Msoses Galindo, Cristian Moises Galindo, Christian Mmoises Galindo, Anthony Perez, Edgar Galindo), ANDREW PAUL GARCIA (aka Andrew Garcia, Youngster, Wacko), JAVIER HUGO GARCIA (aka Negro), JOEL JOSEPH GARCIA (aka Joseph F. Garcia, Joseph Franklin Garcia), MIGUEL ANGEL GARCIA (aka Bunny, Rabbit), RICHARD ANTHONY GARCIA (aka Richard Garcia, Shorty, Little Richard, Rich, Valarta), RONNIE ANDREW GARCIA (aka Ronnie Guillermo Garcia, Evil, Run Run), EDUARDO GOMEZ (aka Eddie Gomez, Eddie, Eddy, Trip, Trips), ALEX GONZALEZ (aka Alex Gonzales, Alejandro Gonzalez, Lil Hitman), EMMANUAL GOMEZ (aka Gustavo Gomez, Manny, Pelon), JOSEPH MICHAEL GONZALEZ, JR. (aka Joe Michael Gonzales, Joseph Michael Gonzales, Joe Gonzales, Joseph M. Gonzales, Joseph Gonzales, Joseph Michael Gonzalez, Joseph Gonzalez, Joe Gonzalez, Shanker), JUAN LUIS GONZALEZ (aka Abel Pico Martinez, Lazy), JASON ROBERT GRAY (aka Demon, Jay), CHARLES RICHARD GREEN (aka Charles Green, Richard Green, Charles Richard Rojas, Richard Charles Rojas, Charles Fitchorp Green, Richard C. Green, Droopy, Green Eyes), JOSE DEJESUS GUZMAN (aka Jose DeJesus Guzman Macias, Jesus Guzman, Jose DeJesus Macias), ANTHONY CHRISTOPHER HART (aka Anthony C. Hart, Anthony Christophe Hart, Sucio), ALBERT ANTHONY HERNANDEZ (aka Albert Hernandez, Jr., Lil Shaggs, Lil Shaggy, Pee Wee), LORI ALEJANDRA HUERTA (aka Lady Wicked), JAVIER GREGORY HURTADO (aka Gregorio

1  Javier Hurtado, Javier Gregorio Hurtado, Jr., Lil
2  Evil, Javy, Little Evil), JESSE BERNAL LARA (aka
   Jesse Lara, Joker), MIGUEL BERNAL LARA (aka
3  Wicked Lara, Boxer, Wicked), DANIEL
4  EMANUAL LOPEZ (aka Daniel Emanuel Lopez,
   Daniel Emanual Lopez, Daniel Emanoal Lopez,
5  Daniel Lopez, Little Man, Travieso), JONATHAN
6  MICHAEL LOPEZ (aka Jonathan Lopez, Johnathan
   Michael Lopez, Charles Michael Lopez, Jonthon
7  Michael Lopez, Jonathan Michael Lopez, Johnny,
8  Before, Polm, Sparky), JOSE ANTONIO
   LORENZO (aka Pooh), ANGEL LUNA (aka Angel
9  Sevilla Luna), CARLOS MARTINEZ MAGANA
10 (aka Carlos Magana Martinez, Mr. Goofy),
   ANTHONY PEREZ MARTINEZ (aka Anthony
11 Martinez, Hector Martinez, Anthony Eliff, Anthony
12 P. Martinez, Anthony Perez Martinez, Jr.),EDGAR
   EDUARDO MARTINEZ (aka Rascal), JOSE
13 ANTONIO MARTINEZ (aka Tony Martinez, Tony),
14 JOSE CARLOS MAYORGA (aka Doeboy, Dough
   Boy, Doughboy, Joe), HARVEY MEJIA (aka
15 Chucky, Gardo), MELISSA NICHOLE MEJIA (aka
16 Melisa Nichol Mejia, Melisa Nicole Mejia, Nicole
   Gonzales, Melisa Saucedo, Melissa Saucedo, Boo
17 Boo), ADRIAN MENDOZA (aka Mr. Sparkey,
18 Sparky), ENRIQUE CAMACHO MERAZ (aka
   Enrique Merez, Gangster, Gremlin, Lil OG, Lil
19 Shortee, O.G. Original), MICHAEL ALBERTO
20 MORALES, JAIME MIGUEL MORGUTIA, JR.
   (aka Jaime Morgutia, Jaime Morgutia, Jr., Jaime M.
21 Morgutia, Jaime Miguel Morgutia), JOSE DANIEL
22 MUNOZ (aka Jose Munoz, Goody, Innocent, Lil
   Good, Lil Goody, Lil Trips), ANGELA LAURA
23 NAVARRO (aka Angie L. Navarro, Angeie Navarro,
24 Angel Laura Navarro, Angie, Big Angie, Grumpy,
   La Grumpy), GILBERT NEGRETE (aka Gilberto
25 Negrete, Wolfy), JOSE ADAN NIETO (aka
26 Clumsy), OMAR PATINO (aka Lil Man), DANIEL
   NEFTALI PEREZ (aka Daniel Nafala Perez, Daniel
27 Nefaly Perez), GUSTAVO ALFONSO PEREZ (aka
28 Gustavo Perez, Cartoon), DIEGO RAMIREZ (aka

[Proposed] Order for Permanent Injunction

Diego Benitez Ramirez, Diego Javier Ramirez),
JUAN SERGIO RAMIREZ (aka Juan Ramirez, Juan
Carlos Ramirez, Boxer), NATHANIEL RYAN
RAMIREZ (aka Nathanial Ryan Ramirez, Nathaniel
Ramirez, Minor), ROMIE DANIEL PEREZ (aka
Oso, Slow, Slow Boy), ZACHARIAH ISAIAH
RAMIREZ (aka Zacharia Isiah Rameriz, Boxer),
ROBERT LOUIS REIL (aka Robert Luis Reil,
Robert Luis Riel, Robert Louis Riel, Robert Reil,
Shanke, Luis, Downer), HOMER LUIS ROSALES
(aka Homer Alvarez, Luis Rosalez Alvarez, Luis
Rosales Castro, Homer Alvarez Rosales, Luis
Rosales, Luis Homer Alvarez Rosales, Homer,
Maze), TYRONE CHRISTOPHER RYE (aka Troy
Rye, William Rye, Tyrone Christophe Rye, William
Norman Rye, Norman Rye William, Michael
Mitchell Veramondi, Richard A. Portillo, Richard
Aaron Portillo, Thumper), CARLOS MANUEL
SANCHEZ (aka Carlos Perez, Carlos Sanchez Perez,
Lost), LUIS ALBERTO SANCHEZ (aka Cheeks,
Kashetez, Cachetes), SHAWN SANDOVAL (aka
Shawny Boy), JESSE SAUCEDO (aka Big Jesse,
Scarp), BEATRICE DESIREE SEPULVEDA (aka
Desiree Sepulveda, Dee Dee, Desiree), ADAM
WAYNE SNELL (aka Adam Wyane Snell, Bones,
Casper), BRIAN JOHN SUAREZ (aka Brian Hugo
Suarez, Dough Boy), FERNANDO TAPIA (aka
Fernando Saul Tapia, Fernie, Panther), ISRAEL
TEJEDA (aka Israel Tejeda, Jr., Clever, J., Shorty),
CLARENCE ANTHONY TENORIO (aka Clarence
Tenorio, Tony Tenorio, Clarence Valdivai, Clarence
Anthony Valdivia – Tenorio, Clever, Klever),
RUBEN TENORIO (aka Ruben Palacios), DANNY
BOY TORRES (aka Baby Boy, Danny Boy, Demon,
Lil Demon, Little Demon), HERMES GERARDO
TROCHEZ (aka Hermes Geraldo Trochez, Hermas
Tarochez, Hermes Torchez, Hermes Tarochez,
Herman Gerardo Trochez, Sleep, Psyco, Syko),
MARTIN BLANCO TRUJILLO (aka Martin
Trujillo, Jose Soto, Bugsy, Crook, Rhino), DANIEL
VASQUEZ (aka Danny Vasquez), DAVID VICTOR

[Proposed] Order for Permanent Injunction

1 VASQUEZ (aka Victor David Vasquez, David
2 Vasquez, Herbie, Sneaky), MANUEL VASQUEZ,
NATHANIEL VALDEZ (aka Nathaniel Valdez
3 Arriano, Nathaniel Joseph Valdez, Leva, Nate, Nate
4 Dogg, Punk), SERGIO VASQUEZ (aka Sergio
Gonzalez), JESUS ANTONIO VELASQUEZ (aka
5 Frog, Frogger, Froggy, Maniac, Groggy), YONI
6 VELASQUEZ (aka Yony Velasquez, Clown),
RAYMUNDO VELEZ (aka Raymundo Rivas Velez,
7 Artic, Artik, Joker, Klone), JEFFREY SEBASTIAN
8 VILLALBA (aka Jeffrey Villalba, Shy Boy, Shy
One), ALFONSO MEJIA YEPEZ (aka Alfonso
9 Majayepez, Alfonso Yepez, Alfonso Clemente
10 Reyes, Alfonso Mejia – Yepez, Alfonzo Yepez
Mejia), ALEXIS FERNANDO ZAMORA (aka Alex
11 Zamora, Rocky, Rookie, 4), EDGAR MIGUEL
12 ZAMORA (aka Edgar Zamora, Edgar M. Zamora,
Chief, Dopey, Doppy), and DOES 1 – 150, inclusive,
13
14                          Defendants.
15
16
17    **GOOD CAUSE HAVING BEEN SHOWN, IT IS HEREBY ORDERED** ORANGE
18 VARRIO CYPRESS CRIMINAL STREET GANG (an unincorporated association), and the
19 ORANGE VARRIO CYPRESS CRIMINAL STREET GANG'S members, participants, agents,
20 associates, servants, employees, aiders, and abettors whose membership, participation, agency,
21 association, service, employment, aid, or abetment is more than nominal, passive, inactive, or
22 purely technical, and all persons acting under, in concert with, for the benefit of, at the direction
23 of, or in association with ORANGE VARRIO CYPRESS CRIMINAL STREET GANG in a
24 manner that is more than nominal, passive, inactive, or purely technical, and Miguel Alvidrez
25 (aka Miguel Aolvidrez, Sleeper, Sleepy), Raymond Martin Atencio (aka Ray Atencio, Raymond
26 Martin Attencio, Reymond Martin Atencio, Rey Atencio, Reymond Martin Atencio, IV,
27 Raymond Martin Atencio, IV, Raymond Atencio, Ray Ray, Rey Rey, Demon), Jose Ayala (aka
28 Jose Ayala, Jr., Shadow), Joseph Anthony Baez (aka Joseph Anthony Bael, Spooky, Spooks,

6
[Proposed] Order for Permanent Injunction

1  Spookster), Gabriel Bastida (aka Gabriel Nasario Bastida), Joshua Allan Branch (aka Josh Allen
2  Branch, Joshua Branch, Joshua A. Branch, Joshua Allen Branch, Cricket), Lauro Campos (aka
3  Laura Campos, Lauro Cumpos, Lauro Campos-Rosas, Goofy, Midnight), Jesus Comea Cano
4  (aka Jesus Cano Correa, Jesus Cantu Correa, Chewee, Chewy, Chuy), Rene Raymond Chavez
5  (aka Indio), Martin Salvador Cornejo (aka Lil Martin, Rabbit), Ruben Candillaria Cruz (aka
6  Reuben Cruz, Ruben Cruz, Ruben Candellarria Cruz,  Pirate), Javier Esparza (aka John David
7  Esparz, Gizmo), Ronnie Andrew Garcia (aka Ronnie Guillermo Garcia, Evil, Run Run), Andrew
8  Paul Garcia (aka Andrew Garcia, Youngster, Wacko), Richard Anthony Garcia (aka Richard
9  Garcia, Shorty, Little Richard, Rich, Valarta), Alex Gonzalez (aka Alex Gonzales, Alejandro
10  Gonzalez, Lil Hitman), Juan Luis Gonzalez (aka Abel Pico Martinez, Lazy), Jason Robert Gray
11  (aka Demon, Jay), Charles Richard Green (aka Charles Green, Richard Green, Charles Richard
12  Rojas, Richard Charles Rojas, Charles Fitchorp Green, Richard C. Green, Droopy, Green Eyes),
13  Jose DeJesus Guzman (aka Jose DeJesus Guzman Macias, Jesus Guzman, Jose DeJesus
14  Macias), Javier Gregory Hurtado (aka Gregorio Javier Hurtado, Javier Gregorio Hurtado,
15  Jr., Lil Evil, Javy, Little Evil), Jesse Bernal Lara (aka Wicked Lara, Joker), Jonathan Michael
16  Lopez (aka Jonathan Lopez, Johnathan Michael Lopez, Charles Michael Lopez, Jonthon
17  Michael Lopez, Jonathan Michael Lopez, Johnny, Before, Polm, Sparky), Jose Carlos Mayorga
18  (aka Doeboy, Dough Boy, Doughboy, Joe), Harvey Mejia (aka Chucky, Gardo), Adrian
19  Mendoza (aka Mr. Sparkey, Sparky), Enrique Camacho Meraz (aka Enrique Merez, Gangster,
20  Gremlin, Lil OG, Lil Shortec, O.G. Original), Jaime Miguel Morgutia, Jr. (aka Jaime Morgutia,
21  Jaime Morgutia, Jr., Jaime M. Morgutia, Jaime Miguel Morgutia), Omar Patino (aka Lil Man),
22  Juan Sergio Ramirez (aka Juan Ramirez, Juan Carlos Ramirez, Boxer), Zachariah Isaiah
23  Ramirez (aka Zacharia Isiah Rameriz, Boxer),  Diego Ramirez (aka Diego Benitez Ramirez,
24  Diego Javier Ramirez),  Nathaniel Ryan Ramirez (aka Nathanial Ryan Ramirez, Nathaniel
25  Ramirez, Minor), Robert Louis Reil (aka Robert Luis Reil, Robert Luis Riel, Robert Louis Riel,
26  Robert Reil, Shanke, Luis, Downer), Tyrone Christopher Rye (aka Troy Rye, William Rye,
27  Tyrone Christophe Rye, William Norman Rye, Norman Rye William, Michael Mitchell
28  Veramondi, Richard A. Portillo, Richard Aaron Portillo, Thumper), Carlos Manuel Sanchez (aka

7

1  Carlos Perez, Carlos Sanchez Perez, Lost), Shawn Sandoval (aka Shawny Boy), Clarence
2  Anthony Tenorio (aka Clarence Tenorio, Tony Tenorio, Clarence Valdivai, Clarence Anthony
3  Valdivia – Tenorio, Clever, Klever), Yoni Velasquez (aka Yony Velasquez, Clown), Alexis
4  Fernando Zamora (aka Alex Zamora, Rocky, Rookie, 4), Edgar Miguel Zamora (aka Edgar
5  Zamora, Edgar M. Zamora, Chief, Dopey, Doppy), Danny Boy Torres (aka Baby Boy, Danny
6  Boy, Demon, Lil Demon, Little  Demon), Martin Blanco Trujillo (aka Martin Trujillo, Jose
7  Soto, Bugsy, Crook, Rhino) are enjoined from engaging in or performing directly or indirectly,
8  any of the following activities in the Safety Zone:
9          The Safety Zone is defined as follows:
10
11  **I. DOWNTOWN TERRITORY**
12  The north curb-line of Collins Avenue; to the west curb-line of Glassell Street; to the north curb-
13  line of Jacaranda Avenue; to the east curb-line of Grand Street: to the north curb-line of Collins
14  Avenue; to the west curb-line of Cambridge Street; to the north curb-line of Adams Avenue; to
15  the east curb-line of California Street; to the north curb-line of Collins Avenue; to the east curb-
16  line of Cambridge Street; to the south curb-line of La Veta Avenue; to the east curb-line of
17  Shaffer Street, continuing along the wrought iron fence-line that boarders the eastern perimeter
18  of Hart Park; to the cinder-block wall that surrounds Hart Park; to the west curb-line of Glassell;
19  to the south curb-line of La Veta; to the west curb-line of Crest Street; to the west curb-line of
20  Feldner Street; to the south curb-line of Chapman Avenue; to the west curb-line of Eckhoff
21  Street; to the south fence-line located to the rear of the businesses at 2100-2200 W.
22  Orangewood; to the east curb-line of the Orangewood off-ramp of the northbound 57 freeway;
23  to the north curb-line of Orangewood Avenue; to the west curb-line of Main Street; to the north
24  curb-line of Collins Avenue.
25  **II. HIGHLAND TERRITORY:**
26  (Area 1) The north curb-line of Lincoln Avenue to the north, the south curb-line of Meats
27  Avenue to the south, the west sound-barrier wall of the south-bound 55 Freeway to the east, and
28  the west curb-line of Canal Street to the west; (Area 2) The north curb-line of Meats Avenue to

[Proposed] Order for Permanent Injunction

1  the north, the fence-line located behind the businesses at 1592 North Tustin Street to the south,

2  the west sound-barrier wall of the south-bound 55 Freeway to the east, the cinderblock wall

3  located behind the businesses on Tustin Street to the west; (Area 3) The fence-line located

4  behind the businesses at 1592 North Tustin Street to the north, the south curb-line of Katella

5  Avenue to the south, the west sound-barrier wall of the south-bound 55 Freeway to the east, the

6  fence-line located behind the businesses at 1400-1518 and 1582 North Tustin Street to the west;

7  (Area 4) The cinder block wall located behind the businesses on the north-west corner of Tustin

8  Street and Katella Avenue to the north and west, the north curb-line of Katella Avenue to the

9  south, the west sound-barrier wall of the south-bound 55 Freeway to the east; (Area 5) The north

10  curb-line of the Katella Avenue to the north, the south curb-line of Collins Avenue to the south,

11  the west sound-barrier wall of the south-bound 55 Freeway to the east, the east curb-line of

12  California Street to the west; (Area 6)  The north curb-line of Collins Avenue to the north, the

13  south curb-line of Mayfair Avenue to the south, the west sound-barrier wall of the southbound

14  55 Freeway to the east, the east curb-line of Shattuck Street to the west; (Area 7) The north

15  curb-line of Mayfair Avenue to the north, the north curb-line of Walnut Avenue to the south, the

16  west sound-barrier wall of the south-bound 55 Freeway to the east, the cinder block wall located

17  behind the businesses on Tustin Street to the west; (Area 8) The north curb-line of Walnut

18  Avenue to the north, the south curb-line of Palm Avenue to the south, the west sound-barrier

19  wall of the south-bound 55 Freeway to the east, the east curb-line of Shattuck Street to the west;

20  (Area 9) The north curb-line of Palm Avenue to the north, the north curb-line of Chapman

21  Avenue to the south, the west sound-barrier wall of the south-bound 55 Freeway to the east, the

22  cinder block wall locate behind the businesses on Tustin Street to the west; (Area 10) The north

23  curb-line of Chapman Avenue to the north, the south curb-line of Palmyra Avenue to the south,

24  the west sound-barrier wall of the south-bound 55 Freeway to the east, the east curb-line of

25  Lincoln Street to the west.

26  **III. HOOVER-WILSON TERRITORY:**

27  The north curb-line of Katella Avenue to the north; the south curb-line of Collins Avenue to the

28  south; the east curb-line of Glassell Street to the east; and the OCTA Metro-Link railroad tracks

1 | to the west. (A map of the Safety Zone is attached hereto as Exhibit A.)

2 |    **a. Do Not Associate:** Anywhere in any public place, any place accessible to the public,

3 | or in public view, do not stand, sit, walk, drive, bicycle, gather or appear with (1) any person

4 | named herein, (2) anyone you know to be a member, participant, agent, associate, servant,

5 | employee, aider, or abettor of the Orange Varrio Cypress criminal street gang, or (3) anyone you

6 | know to be acting under, in concert with, for the benefit of, at the direction of, or in association

7 | with the Orange Varrio Cypress criminal street gang. (*People ex rel. Gallo v. Acuna, supra,* 14

8 | Cal.4th at 1110, 1117-1118, 1121-1122 [discussion of provision (a)], 1123-1125; *In re*

9 | *Englebrecht, supra,* 67 Cal.App.4th at 488-489, 490 fn. 3 [quoting par (a)]; *People v.*

10 | *Englebrecht, supra,* 88 Cal.App.4th at 1243 and 1261; *People ex. rel. Totten v. Colonia Chiques*

11 | (2007) 156 Cal.App.4th 31, 37.)

12 |    **b. Do Not Intimidate:** Anywhere in any public place, any place accessible to the public,

13 | or in public view, do not (1) confront, intimidate, annoy, harass, threaten, challenge, provoke,

14 | assault, or batter anyone in the Safety Zone, or (2) remain in the presence of or assist anyone

15 | you know is confronting, intimidating, annoying, harassing, threatening, challenging, provoking,

16 | assaulting, or battering anyone in the Safety Zone. (*People ex rel. Gallo v. Acuna, supra,* 14

17 | Cal.4th at 1118-1122; *In re Englebrecht, supra,* 67 Cal.App.4th at 490 fn. 3, 493, [par (k)]);

18 | *People ex. rel. Totten v. Colonia Chiques, supra,* 156 Cal.App.4th, 31, 37.)

19 |    **c. Stay Away From Drugs and Drug Paraphernalia:** Anywhere in any public place,

20 | any place accessible to the public, or in public view, do not (1) unlawfully use, possess,

21 | transport, furnish, manufacture, deliver, dispense, distribute, or sell any drug or drug

22 | paraphernalia, (2) remain in the presence of or assist anyone you know is unlawfully using,

23 | possessing, transporting, furnishing, manufacturing, delivering, dispensing, distributing, or

24 | selling any drug or drug paraphernalia, (3) remain in the presence of or assist anyone you know

25 | is unlawfully under the influence of any drug, (4) knowingly remain in the presence of any

26 | illegal drug or drug paraphernalia, or (5) unlawfully be under the influence of any drug. (Bus. &

27 | Prof. Code §§ 4060, 4140-4141; Health & Saf. Code §§ 11014, 11014.5, 11018-11021, 11053-

28 |

[Proposed] Order for Permanent Injunction

1  | 11058, 11364, and 11550; Pen. Code § 31; *People v. Englebrecht, supra,* 88 Cal.App.4th at
2  | 1243, fn. 2, [par (l)]); *People ex. rel. Totten v. Colonia Chiques, supra,* 156 Cal.App.4th, 31, 37.)

3  | **d. Stay Away From Guns, Explosive Devices and Weapons:** Anywhere in any public
4  | place, any place accessible to the public, or in public view, do not (1) use, possess, transport,
5  | furnish, manufacture, deliver, dispense, distribute, or sell any firearm, gun, replica firearm,
6  | ammunition, BB gun, pellet gun, explosive device, destructive device, or weapon such as
7  | knives, dirks, daggers, clubs, metal knuckles, hard plastic knuckles, nunchakus, chains,
8  | slingshots, or any weapon listed in Penal Code § 12020, (2) remain in the presence of or assist
9  | anyone you know is using, possessing, transporting, furnishing, manufacturing, delivering,
10 | dispensing, distributing, or selling any firearm, gun, replica firearm, ammunition, BB gun, pellet
11 | gun, explosive device, destructive device, or weapon such as knives, dirks, daggers, clubs, metal
12 | knuckles, hard plastic knuckles, nunchakus, chains, slingshots, or any weapon listed in Penal
13 | Code § 12020, or (3) knowingly remain in the presence of any firearm, gun, replica firearm,
14 | ammunition, BB gun, pellet gun, explosive device, destructive device, or weapon such as
15 | knives, dirks, daggers, clubs, metal knuckles, hard plastic knuckles, nunchakus, chains,
16 | slingshots, or any weapon listed in Penal Code § 12020. (Health & Saf. Code §§ 12000, 12120,
17 | 12303, and 12305; Pen. Code §§ 31, 12001, 12020, 12020.1, 12301, 12550; OMC §§ 9.32.010,
18 | 9.32.020; *People v. Englebrecht, supra,* 88 Cal.App.4th at 1243, fn. 2, [par (c), (j)]); *People ex.*
19 | *rel. Totten v. Colonia Chiques, supra,* 156 Cal.App.4th, 31, 37.)

20 | **e. Do Not Fight:** Anywhere in any public place, any place accessible to the public, or in
21 | public view, do not (1) unlawfully fight or challenge another person to fight, (2) remain in the
22 | presence of or assist anyone you know is unlawfully fighting or challenging another person to
23 | fight, (3) maliciously and willfully disturb another person by loud or unreasonable noise, (4)
24 | remain in the presence of or assist anyone you know is maliciously and willfully disturbing
25 | another person by loud or unreasonable noise, (5) use offensive words which are inherently
26 | likely to provoke an immediate violent reaction, or (6) remain in the presence of or assist anyone
27 | you know is using offensive words which are inherently likely to provoke an immediate violent
28 |

1    reaction.  (Pen. Code §§ 31 and 415; *People v. Englebrecht, supra,* 88 Cal.App.4th at 1243, fn.

2    2, [par (d)]); *People ex. rel. Totten v. Colonia Chiques, supra,* 156 Cal.App.4th, 31, 37.)

3        **f.  Do Not Trespass:** Do not (1) be present on, remain on, or pass through any property

4    not open to the public unless you have the voluntary consent of the owner, owner's agent, or the

5    person in lawful possession of the property, or (2) remain in the presence of or assist anyone you

6    know is present on any property not open to the public without the voluntary consent of the

7    owner, owner's agent, or the person in lawful possession of the property.  (*People v.*

8    *Englebrecht, supra,* 88 Cal.App.4th at 1243, fn. 2, [par (g)]); *People ex. rel. Totten v. Colonia*

9    *Chiques, supra,* 156 Cal.App.4th, 31, 37.)

10       **g.  Do Not Block Free Passage:** Anywhere in any public place, any place accessible to

11   the public, or in public view, do not (1) willfully and maliciously block the free passage of any

12   person or vehicle on any street, walkway, sidewalk, driveway, alleyway, or other area of public

13   passage, or (2) remain in the presence of or assist anyone you know is willfully and maliciously

14   blocking the free passage of any person or vehicle on any street, walkway, sidewalk, driveway,

15   alleyway, or other area of public passage.  (Pen. Code §§ 31 and 647c; OMC § 12.64.020; *In re*

16   *Englebrecht, supra,* 67 Cal.App.4th at 490 fn. 3, 493 [par (h)].)

17       **h.   Do Not Engage In Graffiti and/or Vandalism And Stay Away From**

18   **Graffiti/Vandalism Tools:** Anywhere in any public place, any place accessible to the public, or

19   in public view, do not (1) maliciously spray paint, mark with marker pens, or otherwise deface

20   property with graffiti or other inscribed material on any public property or private property not

21   your own, (2) remain in the presence of or assist anyone you know is maliciously spray painting,

22   marking with marker pens, or otherwise defacing property with graffiti or other inscribed

23   material on any public or private property not belonging to him, her or you, (3) maliciously

24   damage or destroy real or personal property not your own, (4) remain in the presence of or assist

25   anyone you know is maliciously damaging or destroying real or personal property not belonging

26   to him, her or you, (5) unlawfully possess spray paint cans, marker pens, knives, screwdrivers,

27   razor blades, nails, or other objects capable of destroying, damaging, or defacing property, or (6)

28   remain in the presence of or assist anyone you know is unlawfully possessing spray paint cans,

[Proposed] Order for Permanent Injunction

1   marker pens, knives, screwdrivers, razor blades, nails, or other objects capable of destroying,

2   damaging, or defacing property. (Pen. Code §§ 31, 594, and 594.2; OMC §§ 8.37.030, 8.37.040

3   8.37.045; *People v. Englebrecht, supra,* 88 Cal.App.4th at 1243, fn. 2, [par (e), (f)]); *People ex.*

4   *rel. Totten v. Colonia Chiques, supra,* 156 Cal.App.4th, 31, 37.)

5       **i. Do Not Use Gang Hand Signs or Symbols:** Anywhere in any public place, any place

6   accessible to the public, or in public view, do not (1) use, display, or communicate by means of

7   any words, phrases, physical gestures, hand signs, or symbols that you know describe, represent,

8   or refer to the Orange Varrio Cypress criminal street gang, or (2) remain in the presence of or

9   assist anyone you know is using, displaying, or communicating by means of any words, phrases,

10  physical gestures, hand signs or symbols that you know describe, represent, or refer to the

11  Orange Varrio Cypress criminal street gang. (*People v. Englebrecht, supra,* 88 Cal.App.4th at

12  1243 fn. 2, 1266-1267 [par (s)]); *People ex. rel. Totten v. Colonia Chiques, supra,* 156

13  Cal.App.4th, 31, 37.)

14      **j. Do Not Wear Gang Clothing:** Anywhere in any public place, any place accessible to

15  the public, or in public view, do not (1) wear, display, exhibit, or possess any clothes or

16  accessories that you know advertise, advance, promote, represent, or refer to the Orange Varrio

17  Cypress criminal street gang, including clothes or accessories that display, exhibit, or feature, in

18  any variation or combination, the image, name, words, or letters, "Orange Varrio Cypress,"

19  "Orange Varrio Cypress Street," "Cypress Street," "Cypress Street Killers," "Varrio Orange,"

20  "Varrio Cypress," "Orange Gang," "Old Towne Gang," "Old Towne Orange Gang," "Old

21  Towne Orange," "Orange," "Cypress," "OVC," "OVECE," "Killer Park Gang," "Los Royal

22  Dukes," "Dukes," "Royal Dukes," "Los Dukes," "Creepers," "Los Creepers," "13," "X3,"

23  "XIII," or clothes or accessories that display, exhibit, or feature the color orange, or (2) remain

24  in the presence of or assist anyone that you know is wearing, displaying, exhibiting, or

25  possessing any clothes or accessories that you know advertise, advance, promote, represent, or

26  refer to the Orange Varrio Cypress criminal street gang. (*People v. Englebrecht, supra,* 88

27  Cal.App.4th at 1243 fn. 2, 1266-1267 [par (t)]); *People ex. rel. Totten v. Colonia Chiques,*

28  *supra,* 156 Cal.App.4th, 31, 37.)

13

[Proposed] Order for Permanent Injunction

1        **k.   Stay Away From Burglary Tools:** Anywhere in any public place, any place

2   accessible to the public, or in public view, do not (1) unlawfully use, possess, transport, furnish,

3   manufacture, deliver, dispense, distribute, or sell any screwdrivers, porcelain spark plug chips,

4   shaved keys, picklocks, wire cutters, dent pullers, slingshots, steel shots, spark plugs, "slim

5   jims," "bump key," or any instrument or tool listed in Penal Code § 466, or (2) remain in the

6   presence of or assist anyone you know is unlawfully using, possessing, transporting, furnishing,

7   manufacturing, delivering, dispensing, distributing, or selling any screwdrivers, porcelain spark

8   plug chips, shaved keys, picklocks, wire cutters, dent pullers, slingshots, steel shots, spark plugs,

9   "slim jims," "bump key," or any instrument or tool listed in Penal Code § 466. (Pen. Code §

10   466; *In re Englebrecht, supra,* 67 Cal.App.4th at 490 fn. 3, [par (o)]; *People v. Englebrecht,*

11   *supra,* 88 Cal.App.4th at 1243 fn. 2 [par (n)].)

12        **l.   Obey Curfew if You Are a Minor:** If you are under eighteen (18) years of age,

13   anywhere in any public place, any place accessible to the public, or in public view, do not

14   remain in or upon any public place, vacant lot, or business establishment between the hours of

15   10:00 p.m. on any day and 5:00 a.m. of the following day, unless: (1) you are accompanied by

16   your parent(s), legal guardian, or by a responsible adult, (2) you are on an errand without any

17   detour or stop at the direction of your parent(s), legal guardian or responsible adult, (3) you are

18   on a public or private sidewalk in front of your own dwelling or a dwelling directly adjacent to

19   your dwelling, (4) you are acting within the course and scope of your lawful employment or

20   business or when you are going to or from such place of lawful employment or business by a

21   reasonably direct route, without detour, from or to your home, or when you are going to or from

22   a bona fide interview for lawful employment by a reasonably direct route, without detour, from

23   or to your home, (5) you are going to or from, are attending, or are engaged in, an official

24   school, official religious, or other expressive activity within the scope of your rights under the

25   First Amendment to the Constitution of the United States which activity is supervised or

26   overseen by an adult person on behalf of any public entity, civic organization, non-profit

27   organization, educational organization, governmental organization, or similar organization,

28   where you are going to or from such activity in a reasonably direct route, without detour, from

[Proposed] Order for Permanent Injunction

1   or to your home, (6) you are going to or from a place of lawful entertainment, recreation,
2   culture, or charity that is open to the public, such as a restaurant, theater, museum, church, sports
3   arena, homeless shelter, food bank, library, public park during operating hours, gymnasium,
4   bookstore, coffee shop, or hospital, for an activity that is supervised or overseen by an adult
5   person on behalf of any public entity, civic organization, non-profit organization, educational
6   organization, governmental organization, or similar organization, where you are going to or
7   from such activity in a reasonably direct route, without detour, from or to your home, (7) you are
8   a registered volunteer at any shelter, hospital, school or other charitable institution and you are
9   going to or from your volunteer work in a reasonably direct route, without detour, from or to
10  your home, (8) you are responding to an emergency situation, or (9) you are in a vehicle
11  engaged in interstate travel.  (OMC § 9.28.010; *In re Englebrecht, supra,* 67 Cal.App.3rd at 490
12  fn. 3, [par (x)]; *People v. Englebrecht, supra,* 88 Cal.App.4th at 1243 fn. 2, [par (v)]; *In re*
13  *Nancy C.* (1972) 28 Cal.3rd 747; *Alves v. Superior Court* (1957) 148 Cal.App.2d. 419.)

14       **m.  Obey Curfew if You Are an Adult:** If you are eighteen (18) years of age or older,
15  anywhere in any public place, any place accessible to the public, or in public view, do not
16  remain in or upon any public place, vacant lot, or business establishment between the hours of
17  10:00 p.m. on any day and 5:00 a.m. of the following day, unless: (1) you are on a public or
18  private sidewalk in front of your own dwelling or a dwelling directly adjacent to your dwelling,
19  (2) you are acting within the course and scope of your lawful employment or business, or when
20  you are going to or from such place of lawful employment or business by a reasonably direct
21  route, without detour, from or to your home or when you are going to or from your home for a
22  bona fide interview for lawful employment by a reasonably direct route, without detour, from or
23  to your home, (3) you are going to or from, are attending, or are engaged in, an official school,
24  official religious, or other expressive activity within the scope of your rights under the First
25  Amendment to the Constitution of the United States, where you are going to or from such
26  activity in a reasonably direct route, without detour, from or to your home, (4) you are going to
27  or from a place of lawful entertainment, recreation, culture, or charity that is open to the public,
28  such as a restaurant, theater, museum, church, sports arena, homeless shelter, food bank, library,

[Proposed] Order for Permanent Injunction

1  public park during operating hours, gymnasium, coffee shop, or hospital, where you are going to

2  or from such place in a reasonably direct route, without detour, from or to your home, (5) you

3  are a registered volunteer at any shelter, hospital, school or other charitable institution and you

4  are going to or from your volunteer work in a reasonably direct route, without detour, from or to

5  your home, (6) you are responding to an emergency situation, or (7) you are in a vehicle

6  engaged in interstate travel.  (OMC § 9.28.010; *In re Englebrecht, supra,* 67 Cal.App.3rd at 490

7  fn. 3, [par (x)]; *People v. Englebrecht, supra,* 88 Cal.App.4th at 1243 fn. 2, [par (v)]; *In re*

8  *Nancy C.* (1972) 28 Cal.3rd 747; *Alves v. Superior Court* (1957) 148 Cal.App.2d. 419.)

9      **n. Stay Away From Alcohol:** Anywhere in any public place, or any place accessible to

10  the public, do not (1) drink alcoholic beverages, (2) possess an open container of an alcoholic

11  beverage, (3) unlawfully be under the influence of alcohol, (4) knowingly remain in the presence

12  of anyone possessing an open container of an alcoholic beverage, or (5) knowingly remain in the

13  presence of an open container of an alcoholic beverage.  (Pen. Code § 647(f); Veh. Code §§

14  21221.5, 23140, 23152(a); OMC §9.16.020; *People ex. rel. Totten v. Colonia Chiques, supra,*

15  156 Cal.App.4th p. 38-39); *People ex. rel. Totten v. Colonia Chiques, supra,* 156 Cal.App.4th, 31,

16  37.)

17      **o. Do Not Act as a Lookout:**  Anywhere in any public place, any place accessible to the

18  public, or in public view, do not keep watch, yell, whistle, signal, gesture, or otherwise act as a

19  lookout to warn another person of the approach or presence of a law enforcement officer.

20  (*People v. Engelbrecht, supra,* 88 Cal.App.4th 1236, 1243, fn. 2, [par (q)]; *In re Engelbrecht,*

21  *supra,* 67 Cal.App.4th 486, 490, fn. 3, [par (r)]); *People ex. rel. Totten v. Colonia Chiques,*

22  *supra,* 156 Cal.App.4th, 31, 37.)

23      **p. Obey All Laws:** Anywhere in any public place, any place accessible to the public, or

24  in public view, obey all laws and court orders.

25

26  DATED:  _5-14-09_

27                              ~~KAZUHARU MAKINO~~
                            Hon. Kazuharu Makino

28                              Judge of the Superior Court

16

**Exhibit A**



# OVC Target Areas