Norman J. Watkins, Esq. (SBN - 87327)
nwatkins@lynberg.com
S. Frank Harrell, Esq. (SBN - 133437)
sharrell@lynberg.com
Melissa D. Culp, Esq. (SBN - 265159)
mculp@lynberg.com
LYNBERG & WATKINS
333 The City Boulevard West, Suite 640
Orange, California 92868-5915
Telephone:  714/937-1010
Facsimile:   714/937-1003
Attorneys for Defendant-Respondent, TONY RACKAUCKAS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL VASQUEZ, et al.<br><br>        Plaintiffs/Petitioners,<br><br>vs.<br><br>TONY RACKAUCKAS, et al.<br><br>        Defendants/Respondents, | CASE NO. SACV 09-1090-VBF(RNBx)<br><br>*Assigned for All Purposes to:*<br>Hon. Valerie Baker Fairbank<br>Courtroom #9<br><br>**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**<br><br>**CLASS ACTION**<br><br>*FPTC:*      *November 8, 2010*<br>*Trial Date:*  *November 9, 2010* |

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

1

## TABLE OF CONTENTS

2   I.    PRELIMINARY STATEMENT ................................................................ 1

3   II.   FACTUAL BACKGROUND ................................................................. 3

4   III.  PLAINTIFFS' 42 U.S.C. SECTION 1983 CLAIMS OF

5         DEPRIVATION OF PROCEDURAL DUE PROCESS ARE

6         MERITLESS. ................................................................................ 8

7         A.    Plaintiffs Suffered No Deprivation by Being Dismissed and

8               Later Served With the Injunction. ............................................. 9

9         B.    Due Process Does Not Require Additional Procedures ................. 13

10              1.    The Private Interests ........................................................ 14

11              2.    The Risk Of An Erroneous Deprivation of Such

12                    Interest Through The Procedures Used, And The

13                    Probable Value, If Any, Of Additional Procedural

14                    Safeguards. ........................................................... 17

15              3.    The Government's Interests and Burden ............................ 21

16  IV.   PLAINTIFFS' CLAIMS OF DEPRVIATION OF PROCEDURAL

17        DUE PROCESS IN VIOLATION OF ARTICLE I, SECTION 7(a)

18        OF THE CALIFORNIA CONSTITUTION ARE MERITLESS AS

19        A MATTER OF LAW. ...............................................................23

20  V.    PLAINTIFFS' PROPOSED INJUNCTION IMPROPERLY

21        INTRUDES INTO ONGOING STATE COURT LITIGATION

22        AND VIOLATES THE OCDA'S RIGHT TO ADVOCATE

23        FREELY. ................................................................................26

24  VI.   PLAINTIFFS' REQUEST FOR HABEAS CORPUS IS

25        MERITLESS. ...........................................................................30

26

27

28

# TABLE OF AUHTORITIES

## Cases

Alemite Mfg. Corp. v. Staff,
 42 F.2d 832, 832 (2d Cir.1930) ..................................................................12

American Liberty Bail Bonds, Inc. v. Garamendi,
 141 Cal. App. 4th 1044, 1058 (2006) ..........................................................25

Barry v. Bergen County Probation Dep't,
 128 F.3d 152, 161 (3rd Cir. 1997) ...............................................................30

Berger v. Superior Court of Sacramento County,
 175 Cal. 719, 721 (1917) ........................................................................10, 24

Brewster v. Board of Educ. of Lynwood Unified School Dist.,
 149 F.3d 971, 982 (9th Cir. 1998) ...............................................................8, 20

Brittain v. Hansen,
 451 F.3d 982, 999 (9th Cir. 2006) ...............................................................20

Buckingham v. Secretary of the United States Department of Agriculture,
 603 F.3d 1073, 1082 (9th Cir. 2010) ..........................................................14

Cafeteria Workers v. McElroy,
 367 U.S. 471, 481 (1972) ..........................................................................13

Dallas v. Stanglin,
 490 U.S. 19, 25 (1989) ..............................................................................16

Deshaney v. Winnebago County Dep't of Social Services,
 489 U.S. 189, 199 (1989) ..........................................................................18

Eng v. Cooley,
 552 F.3d 1062, 1069 (9th Cir. 2009) ......................................................2, 26, 28

Gootfried v. Medical Planning Services, Inc.
 142 F.3d 326, 332 (6th Cir. 1998) ..........................................................2, 29

Hensley v. Municipal Court,
 411 U.S. 345, 351 (1973) ..........................................................................30

Hoover v. Wagner

    47 F.3d 845 (7th Cir. 1995)..............................................................2, 29

In re Lennon,

    166 U.S. 548, 554 (1897) ................................................................10, 14

In re Orlando C.,

    2010 Cal. App. Lexis 1193 (2010) ..............................................................23

Iraheta v. Superior Court,

    70 Cal. App. 4th 1500, 1511 (1999) ..........................................15, 19, 20, 22

Jacobellis v. Ohio,

    378 U.S. 184, 199 (1964) ................................................................21

Jones v. Cunningham,

    371 U.S. 236, (1963) ................................................................30

Kompare v. Stein,

    801 F.2d 883, 892 (7th Cir. 1986) ................................................................18

Legal Services Corp. v. Velazquez,

    531 U.S. 533 (2001)..........................................................26, 27, 28

Madsen v. Women's Health Center, Inc.,

    512 U.S 753, 776 (1994) ................................................................16

Mathews v. Eldridge

    424 U.S. 319, 335 (1976) ..........................................13, 14, 20, 22

Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros,

    176 F.3d 669, 674-675 (3d Cir. 1999) ................................................................12

Microsystems Software, Inc. v. Scandinavia Online AB,

    226 F.3d 35, 43 (1st Cir. 2000) ..........................................11, 12, 20, 22

NLRB v. Sequoia District Council of Carpenters,

    568 F.2d 628, 633 (9th Cir. 1977) ................................................................11

People ex rel. Gallo v. Acuna,

    14 Cal.4th 1090, 1117 (1997)................................................................passim

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

*People ex rel. Totten v. Colonia Chiques,*
    156 Cal. App. 4th 31, 41 (2007) ............................................................... passim

*People v. Allen,*
    44 Cal. 4th 843, 862-63 (2008) ........................................................... 25

*People v. Englebrecht,*
    88 Cal. App. 4th 1236, 1263 (2001) ........................................... 16, 17, 19

*People v. Gonzalez,*
    12 Cal. 4th 804, 818-19 (1996) ........................................................... 13

*People V. Ramirez,*
    25 Cal. 3d 260 (1979) ........................................................... 13, 14, 25

*Peterson v. Highland Music, Inc.,*
    140 F.3d 1313, 1323 (9th Cir. 1998) ........................................... 9, 10, 11

*Pitchess v. Superior Court*
    2 Cal. App. 3d 653, 656 (1969) ........................................................... 24

*Regal Knitwear Co. v. NLRB,*
    324 U.S. 9, 14 (1945) ........................................................................ 13

*Ross v. Superior Court,*
    19 Cal. 3d 899, 906 (1977) ........................................................ 10, 11, 25

*Ryan v. Cal. Interscholastic Fed.,*
    94 Cal. App. 4th 1048, 1072 (2001) ................................................... 25

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier,*
    262 F.3d 559, 565 (6th Cir. 2001) ..................................................... 12

*United States v. Baker,*
    641 F.2d 1311, 1315 (9th Cir. 1981) ........................................... 11, 22

*United States v. Batchelder,*
    442 U.S. 114 (1979) ........................................................................ 18

*United States v. Hall,*
    472 F.2d 261 (5th Cir. 1972) ............................................................ 10

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

United States v. Soltero,
        510 F.3d 858, 866-67 (9th Cir. 2007)..................................................15

Vuitton et Fils S. A. v. Carousel Handbags,
        592 F.2d 126, 129 (2d Cir. 1979) ............................................10, 20

White v. Lambert,
        370 F.3d 1002, 1006 (9th Cir. 2004) ............................................31

Williamson v. Gregoire,
        151 F.3d 1180, 1183 (9th Cir. 1998) ............................................30

Zenith Radio Corp. v. Hazeltine Research Inc.,
        395 U.S. 100, 112 (1969)...............................................9, 11, 20, 22

## Statutes

28 U.S.C. § 2254...............................................................................31, 32

28 U.S.C. § 2441.....................................................................................30

Cal Code of Civ. Proc. § 533 ...............................................................20

Cal. Code Civ. Proc. § 387.............................................................13, 25

California Penal Code § 186.22 ............................................................ 5

Fed. R. Civ. Proc. 65(d) ...............................................................passim

Fed. R. Civ. Proc. 65(d)(2)..................................................................... 9

Fed. R. Civ. Proc. 65(d)(2)(B) .............................................................. 2

Pen. Code § 186.21 ...............................................................................21

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

As the Court is aware, this case takes place against the backdrop of an existing Superior Court anti - OVC gang injunction, covering a previously crime-riddled portion of the City of Orange. Before issuing its order, the Superior Court heard evidence, carefully balanced all of the pertinent factors, and forcefully acted to aid beleaguered Orange residents who heretofore had lived in constant fear.

In the wake of the Superior Court's anti- gang injunction, crime is down. The neighborhood's quality of life has improved. And OVC's once-pervasive influence has markedly diminished.

Plaintiffs in this matter are OVC gang members or associates who have witnessed all these developments with palpable anger and dismay. Through this litigation, they now seek a federal Court order gutting the Superior Court's gang injunction.

According to their operative Complaint, Plaintiffs seek an order from this Court forbidding the Orange County District Attorney's Office from complying with the state court's injunction, unless or until the OCDA's Office convinces the Superior Court to modify its order in a manner to Plaintiffs' liking. Simply put, Plaintiffs' case is undercut by a host of Constitutional principles and procedural defects.

Plaintiffs chiefly seem to quarrel with the Superior Court's decision to not require that every OVC member be named, tried and found to be an OVC associate before being served with the injunction. However, the Constitution does not require such onerous and unworkable procedures before issuance of an anti-gang injunction. See, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 41 (2007)( "[I]t is simply not practical to require [the district attorney] to name Colonia Chiques gang members individually as defendants. There are approximately 1,000 members, and membership is continually changing. New members are joining the gang, while

old members are leaving it or becoming inactive. If the gang could not be sued, respondent would have to bring a new action for injunctive relief against each new member.") Federal injunction law in the non-gang setting is in full accord with this common sense principle. <u>See</u>, <u>Fed. R. Civ. Proc.</u> 65(d)(2)(B) ("Every order granting an injunction . . .  is binding only upon the ***parties to the action***, their officers, agents, servants, employees, and attorneys, ***and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.***") (Emphasis added). Plaintiffs have never offered any coherent reason why the considerations thought controlling in Rule 65, and the many cases applying it, should not be dispositive here.

Moreover, Plaintiffs can challenge the OVC injunction before the Superior Court judge who issued it – but they refuse to do so and they offer no explanation for their inaction. In any event, by approaching this federal Court with their criticisms of the state court, to the complete exclusion of the state court, Plaintiffs ignore basic comity principles. <u>See</u>, <u>Gootfried v. Medical Planning Services, Inc.</u> 142 F.3d 326, 332 (6th Cir. 1998)("[A] federal court should abstain when a nonparty to a state court injunction brings a [Constitutional] challenge to the injunction in federal court before requesting relief from the state court."); <u>Hoover v. Wagner</u> 47 F.3d 845 (7th Cir. 1995) (Declining to supervise state injunction, on the finding that it would constitute an "affront to [judicial] comity.")

Finally, Plaintiffs admittedly seek an order from this Court that would silence the District Attorneys' Office in Superior Court. Indeed, the OCDA would be permitted to advocate, if at all, only in support of an amendment to the Superior Court's order providing Plaintiffs with, what they vaguely term, "a full constitutionally adequate hearing" before service of the injunction. Leaving aside the vagueness of Plaintiffs' phrasing, they cannot legitimately seek to restrain the OCDA's First Amendment advocacy rights before a Superior Court judge. <u>See</u>, <u>Eng v. Cooley</u>, 552 F.3d 1062, 1069 (9th Cir. 2009) ("[C]ounsel must be free of state

1  control and unfettered in the exercise of independent judgment on behalf of the

2  client . . .. ***There can be little doubt, then, that state action designed to . . . chill an***

3  ***attorney's advocacy for his or her client strikes at the heart of the First***

4  ***Amendment."***) (Emphasis added.)

5      In short, Plaintiffs' federal case should be recognized as what it is – a

6  backhanded attempt to "appeal" a Superior Court order with which they disagree,

7  without ever appearing in front of the state court judge who actually issued the

8  order. This Court should reject Plaintiffs' maneuverings and should dismiss this

9  defective case.

10  **II.    FACTUAL BACKGROUND**

11      The Orange Varrio Cypress ("OVC") gang is a notoriously violent criminal

12  enterprise in the City of Orange with roots dating back to the 1960's.  The OVC has

13  effectively taken whole sections of the City of Orange hostage through an on-going

14  pattern of criminal activity that includes attempted murder, assault with a deadly

15  weapon, terrorist threats, intimidation of victims and witnesses, illegal possession of

16  firearms and other weapons, robbery, burglary, theft, drug sales, and felony

17  vandalism.

18      In August of 2008, the Orange County District Attorney's Office, with the

19  assistance of the Orange Police Department ("OPD") investigated OVC criminal

20  activity and, after an exhaustive review of criminal records, and pertinent legal

21  authorities, determined that OVC is a "public nuisance" for purposes of an anti-gang

22  injunction.  Indeed, Detective Joel Nigro and others within OPD assisted OCDA by

23  compiling the documentation and criminal records of each individual it believed

24  based on specialized knowledge and experience was an active participant of OVC.

25  The OCDA independently reviewed and analyzed all the documents OPD provided

26  and also gathered more information on several individuals by obtaining court

27  adjudications.

28

On February 17, 2009, the OCDA filed a civil injunction action against the OVC and 115 individual active participants of the gang in the Orange County Superior Court to abate the public nuisance.  After reviewing the pertinent evidence, and balancing all the appropriate factors, Orange County Superior Court Judge Kazuharu Makino issued a preliminary injunction against the OVC, enjoining the gang and its members from certain nuisance activities, within a targeted area, that, in his judgment, facilitate the OVC's criminal endeavors.

While many defaulted, several other defendants named in the Superior Court case, including several named Plaintiffs, made appearances in the case by either filing answers to the OCDA's Complaint, general denials, declarations, or applications for waiver of court fees and costs.  In addition, several other named state court defendants, including the federal Plaintiffs herein, made appearances at the proceedings or had parents or counsel make appearances on their behalf.  At that time, Plaintiffs were provided the opportunity to make whatever arguments they felt appropriate. Based on the clear weight of the evidence, however, Judge Makino rejected Plaintiffs' protestations of innocence and issued a preliminary injunction against many individuals, including Plaintiffs Gabriel Bastida, Miguel Lara, and Manuel Vasquez.[1]

Plaintiffs were also given the opportunity to petition the Defendant District Attorney's Office directly for removal from the injunction. Under this process, Plaintiffs could have contacted the District Attorney's Office and presented evidence before a neutral panel regarding the propriety of their inclusion in the injunction.  However, no named Plaintiff has ever attempted to use this procedure despite being served with the Petition along with the summons and complaint.  As

---

[1] Plaintiff, Randy Bastida, a juvenile at the time, did not have the Preliminary Injunction issued against him only due to his legal status as an unrepresented juvenile without a guardian ad litem.

there is no expiration date on the petition for removal, this process is still presently available to Plaintiffs.

As neither California nor federal law requires individual gang members to be named as defendants in anti-gang injunction proceedings, many of the named individuals were subsequently dismissed by the state court, and the matter ultimately moved forward against the OVC gang on a streamlined basis. Apart from complying with the law, dismissal of the named individuals in the case helped them avoid the lasting stigma of being labeled as a "gang member", which would assuredly impact their ability to participate in society as an employable, productive citizen.

During hearings on the issuance of the injunction, Plaintiffs and their attorneys vigorously opposed the District Attorney's position. Specifically, Plaintiffs' counsel vigorously contended, as they do now, that the Superior Court had no power to enter an injunction against individual alleged gang members, unless the Superior Court first held individualized hearings for each individual in issue. Judge Makino rejected these arguments and refused to impose such conditions on his Order. On May 14, 2009, Judge Makino signed a permanent injunction finding the OVC to be a criminal street gang pursuant to California Penal Code § 186.22.

As provided by federal and California law, the Injunction applies to all defaulting defendants and to all members of the gang, whether or not named in the original lawsuit and to all "participants, agents, associates, servants, employees, aiders, and abettors whose membership, participation, agency, association, service, employment, aid or abetment is more than nominal, passive, inactive, or purely technical and all persons acting under, in concert with, for the benefit of, at the direction of, or in association with the OVC criminal street gang in any manner that is more than nominal, passive, inactive, or purely technical."  The injunction terms apply to a limited gang operation area in the City of Orange, which the state court termed the "Safety Zone".

Plaintiffs were thereafter served with the injunction solely as members of the OVC gang in their role as "participants, agents, associates, servants, employees, aiders, and abettors whose membership, participation, agency, association, service, employment, aid or abetment is more than nominal, passive, inactive, or purely technical."  Despite Plaintiffs' arguments to the contrary, Plaintiffs are members, associates and affiliates of the OVC gang and were properly included in the injunction.  Plaintiffs have not been deprived any right or liberty interest as they were properly subjected to injunction.  Moreover, Plaintiffs have not sustained any injuries as any such alleged injuries are based on speculation.

The testimony at trial will demonstrate the positive affects of OCDA's decision to dismiss individuals from the state action.  Indeed, one of the reasons was to benefit the actual OVC participants themselves.  By no longer being named in a gang injunction, they are not labeled "gang members" and won't be harmed in their future endeavors to find employment and live productive lives as law abiding citizens.  In addition, since the injunction applies only to those whose membership, participation, agency, association, service, employment, aid or abetment is more than nominal, passive, inactive, or purely technical and those persons who act under, in concert with, for the benefit of, at the direction of, or in association with the OVC, the individual controls the duration of the injunction's imposition upon him.  Indeed, the individual can simply stop all participation in the OVC and then will not be found in contempt because the People will not be able to prove their case that the individual participated in, or acted in concert with, OVC.

In addition, the OCDA ensured that there would be little risk of erroneous inclusion in the injunction because it only served the permanent injunction on those dismissed individuals who the Orange County Superior Court issued a preliminary injunction against, thereby finding the individual an active participant of OVC, those who defaulted in the case, and the juveniles that Judge Makino refused to issue an injunction against.  Thus, there was no "unilateral" decision without judicial

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

approval as Plaintiffs like to contend.  Not only did OPD create the list and gather background documentation of individuals that it knew were OVC based on many years of collective experience and personal knowledge, but OCDA reviewed the information and created a final list.  Additionally, the Superior Court also reviewed documentation and made preliminary findings.  OCDA will show that absent some new information that an individual was actively participating in OVC, it made the decision not to serve them with the permanent order if Judge Makino declined the preliminary injunction against them.  This was so even though OCDA did not submit all its documentation and evidence of gang participation to the Orange County Superior Court for each individual.

During the proceedings on the preliminary injunction, Judge Makino refused to issue the injunction against all unrepresented minors out of concern that they could later void the injunction against them.  As OCDA could not get the court to appoint counsel for the juveniles in the civil case and no lawyers ever assumed the role, there was no other option but to dismiss the juveniles and serve them the permanent order.  Indeed, OCDA could not have afforded the juveniles a "hearing" on the permanent order even if they wanted to as Judge Makino's decision effectively precluded such proceedings.  As nearly half of the individuals on the injunction were juveniles, the entire purpose of the injunction would be thwarted if the order could not be enforced against the juveniles.

Additionally, government administrative and fiscal burdens were alleviated by dismissing the individuals and serving them with the permanent order.  OCDA was realizing that an injunction which only included specifically named individuals would be annulled in only a matter of months or years.  As law enforcement knows, and has been affirmed by courts, gang membership is constantly changing.  OCDA also was finding in its other injunctions that it was forced to make a showing of gang membership multiple times: it was having to prove active participation in the gang during contempt proceedings despite the fact that gang participation was

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

already proven against the individual when the preliminary and permanent injunctions were issued. Accordingly, the process of serving the gang alone, as opposed to individuals only, is not only proper under California law, but it also serves other purposes, such as providing benefits to both the individual and the government. Plaintiffs have a huge burden to show that there was some difference in being dismissed and served or just being served in the first instance; a burden which Plaintiffs cannot overcome.

In making its decision to dismiss individuals, OCDA knew, as did counsel who represented individuals in the state action and the Plaintiffs herein, that Plaintiffs retain the right to challenge any aspect of the order, including their participation in the OVC gang, through multiple avenues of ***state court*** litigation, including moving to vacate the default judgment, intervening in the state court action, appealing the judgment to the state court of appeal, or presenting their Constitutional challenges at any subsequent state court contempt proceedings. This Court in this procedural due process case is not the proper forum for Plaintiffs to attack the State Court's order and its proper imposition upon them. Such arguments would be appropriate, if at all, on appeal of the State Court Order or during contempt proceedings.

## III.   PLAINTIFFS' 42 U.S.C. SECTION 1983 CLAIMS OF DEPRIVATION OF PROCEDURAL DUE PROCESS ARE MERITLESS.

In order to prevail under a Section 1983 claim for deprivation of due process, Plaintiffs must prove that by being dismissed from the case and later served with permanent order (1) deprived Plaintiffs of life, liberty, or property; (2) without due process of law. See, Brewster v. Board of Educ. of Lynwood Unified School Dist., 149 F.3d 971, 982 (9th Cir. 1998).

/ / /

/ / /

## A.     <u>Plaintiffs Suffered No Deprivation by Being Dismissed and Later Served With the Injunction.</u>

Plaintiffs have not been deprived of any constitutional rights by being subjected to the injunction by the manner in which they were.  Injunction law is more than abundantly clear that nonparties, like Plaintiffs, can be subject to an injunction so long as they have notice of the injunction and act in concert or participation with a party to the injunction.  <u>Fed. R. Civ. Proc.</u> 65(d)(2); <u>Zenith Radio Corp. v. Hazeltine Research Inc.</u>, 395 U.S. 100, 112 (1969); <u>see also</u> <u>Peterson v. Highland Music, Inc.</u>, 140 F.3d 1313, 1323 (9th Cir. 1998).  In fact, due process in the case of an injunction running against a nonparty is satisfied during contempt proceedings.

Plaintiffs cannot show that the language the Superior Court employed in drafting the permanent injunction violated any of their Constitutional rights—and for good reason—the law is contrary to Plaintiffs' contentions.  It makes no difference that Plaintiffs were dismissed and later served with the injunction.  Indeed, it is well established under Federal and State law that Plaintiffs had no right to be named in the injunction in the first instance.  Long settled principles of federal law provide that injunctions issued against a party organization bind the agents of that organization to the extent they are acting on behalf of the organization – whether they are named defendants or not.  <u>See</u>, <u>Fed. R. Civ. Proc.</u> 65(d)(2)(B) ("Every order granting an injunction . . .  is binding only upon the ***parties to the action***, their officers, agents, servants, employees, and attorneys, ***<u>and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise</u>***.") (Emphasis added).

It is well-settled in cases applying <u>Fed. R. Civ. Proc.</u> 65(d) that a non-party can be lawfully bound by an injunction to which he was not named.  As stated by the United States Supreme Court over 100 years ago:

> To render a person amenable to an injunction it is neither
> necessary that he should have been a party to the suit in which
> the injunction was issued, nor to have been actually served with a
> copy of it, so long as he appears to have had actual notice.

In re Lennon, 166 U.S. 548, 554 (1897); see also, Vuitton et Fils S. A. v. Carousel Handbags, 592 F.2d 126, 129 (2d Cir 1979) (stating that Fed. R. Civ. Proc. 65(d) "codifies the long settled principle that personal service of an injunction is not required so long as those whom the [Defendant] seeks to hold in contempt had actual notice of the decree"); United States v. Hall, 472 F.2d 261 (5th Cir. 1972) (Same.).

In the century since Lennon was decided, its holding has supported the practice of having injunctions run against non-party members of an enjoined entity in case after case – including in the California authorities the state court relied on in issuing its OVC injunction. See, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 44 (2007) (Non-party gang members bound by anti-gang injunction.); Ross v. Superior Court, 19 Cal. 3d 899, 906 (1977) (Nonparty agent of enjoined defendant bound by injunction, rejecting due process arguments). The Ninth Circuit is in accord with this rule as well. See, Peterson v. Highland Music, Inc., 140 F.3d 1313, 1323 (9th Cir. 1998) ("Nor did the district court abuse its discretion in applying its contempt citation to Highland and Hawkins. Highland and Hawkins were ***not parties*** to the underlying action . . . To be held liable in contempt, it is necessary that a ***non-party*** respondent must either ***abet the defendant*** [in violating the court's order] or be ***legally identified*** with him. . . and that the non-party have notice of the order.")(Emphasis added).  In short, "this practice has always been upheld by the courts," and "this practice is thoroughly settled and approved by the courts." Berger v. Superior Court of Sacramento County, 175 Cal. 719, 721 (1917).

There is no requirement that a non-party be given an opportunity to oppose the proposition that they are in "active concert" with the organizational party named

in the injunction – before being served with the injunction.  Plaintiffs have no evidence or law to the contrary.  Rather, a non-party's opportunity to contest the injunction has been consistently provided after there has been a violation of the order; in other words, during contempt proceedings.  See, Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100, 112 (1969) (Stating that federal courts properly issue injunctions against non-parties in active concert with notice of the injunction, but that the non-party must be shown to be in active participation before being found in contempt.); Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 43 (1st Cir. 2000) (The fact that injunctions run to non-parties does not risk a due process violation because due process is afforded during contempt proceedings -- "Contempt proceedings operate to ensure that nonparties have had their day in court."); United States v. Baker, 641 F.2d 1311, 1315 (9th Cir. 1981) ("Requiring non-parties in privity with parties to have actual notice of the injunction before convicting them of criminal contempt satisfies due process."); see also, Peterson v. Highland Music, Inc., 140 F.3d 1313, 1323 (9th Cir. 1998) (Nonparties may be subject to contempt proceedings.); NLRB v. Sequoia District Council of Carpenters, 568 F.2d 628, 633 (9th Cir. 1977) (Finding a nonparty subject to the injunction during contempt proceedings.).

Stated otherwise, case law clearly shows that an injunction which runs to non-parties in active concert pursuant to Fed. R. Civ. Proc. 65(d) without a pre-service hearing does not constitute a deprivation.  Rather, a non-party's opportunity to contest the injunction has been consistently provided after there has been a violation of the order; in other words, during contempt proceedings.  See, Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100, 112 (1969); see e.g., Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 43 (1st Cir. 2000); Ross v. Superior Court, 19 Cal. 3d 899, 906 (1977).

Indeed when Fed. R. Civ. Proc. 65(d) was analyzed by the Third Circuit it stated, "[t]he term 'active concert and participation' merely speaks to the question of

the persons who can permissibly be bound by an injunction. ***This is a limitation built into the Federal Rules of Civil Procedure for reasons of due process***.” Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 674-675 (3d Cir. 1999) (emphasis added)(citing Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832 (2d Cir.1930) ("Order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them. . . ."))  See also, Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier, 262 F.3d 559, 565 (6th Cir. 2001) (finding that subjecting a non-party to the injunction was consistent with Fed. R. Civ. Proc. 65(d) and the Due Process Clause of the Fourteenth Amendment).

As summarized by the First Circuit:

[T]he adjudicative framework surrounding contempt proceedings fully protects nonparties' constitutional rights.. . .. We explain briefly why. . . due process is not at risk. ***Contempt proceedings operate to ensure that nonparties have had their day in court.*** In order to hold a nonparty in contempt, a court first must determine that she was in active concert or participation with the party specifically enjoined (typically, the named defendant). [citation omitted]. This means, of course, that the nonparty must be legally identified with that defendant, or, at least, deemed to have aided and abetted that defendant in the enjoined conduct. [citation omitted]. The existence of such a linkage makes it fair to bind the nonparty, ***even if she has not had a separate opportunity to contest the original injunction***, because her close alliance with the enjoined defendant adequately assures that her interests were sufficiently represented.

Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 43 (1st Cir. 2000) (Emphasis added.); see also, Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14

(1945) ("Defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.").

Significantly, in contempt proceedings, Plaintiffs would have far more rights than they ever would have had as civil injunction defendants. Indeed, criminal contempt proceedings would provide Plaintiffs with the benefits of right to counsel, unanimous jury verdicts, proof beyond a reasonable doubt, and all appellate rights thereto. See, People v. Gonzalez, 12 Cal. 4th 804, 818-19 (1996). In short, California injunction procedures -- allowing for both direct intervention by a non-party served with a civil injunction (Cal. Code Civ. Proc. § 387), and collateral attack on an injunction during criminal proceedings -- provide a wealth of opportunities for any individual, including Plaintiffs, to have their day in Court. See, People v. Gonzalez, 12 Cal. 4th 804, 818-19 (1996).

Plaintiffs cannot show that they have been denied due process by being subjected to the injunction in a manner which complies with federal and California law. See Fed. R. Civ. Proc. 65(d).

**B.     Due Process Does Not Require Additional Procedures**

Even assuming that Plaintiffs were impermissibly deprived a constitutional right, ***which they were not,*** application of the due process balancing test demonstrates that no pre-service hearing, or similar process, is required before Defendant can subject Plaintiffs to the gang injunction. Procedural due process is flexible and the Supreme Court and the California Supreme Court, alike, have held that due process requires a balancing of interests. See, Mathews v. Eldridge 424 U.S. 319, 335 (1976); Cafeteria Workers v. McElroy, 367 U.S. 471, 481 (1972); see also People V. Ramirez, 25 Cal. 3d 260 (1979). The Mathews Court emphasized that there is no general requirement that a full evidentiary hearing be afforded before a taking of a liberty or property interest; rather, what is required is a prior hearing ***consistent with the competing interest***. Mathews v. Eldridge 424 U.S. 319, 335

(1976) (emphasis added).  Indeed, "procedural due process does not require that notice and opportunity to be heard occur before the deprivation."  <u>Buckingham v. Secretary of the United States Department of Agriculture</u>, 603 F.3d 1073, 1082 (9th Cir. 2010).

Evidence and testimony will show that Plaintiffs' interests are adequately protected by the procedures the Defendants and the State Court used and that the government interest and burden outweighs the marginal benefit of additional procedures.  In order to prevail on their claim that they are entitled to greater procedures than those presently available, Plaintiffs must employ a balancing test, weighing the following factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. <u>See</u>, <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976); <u>see also</u> <u>People v. Ramirez</u>, 25 Cal. 3d 260, 269 (1979).

### 1. The Private Interests

Plaintiffs cannot show that they were impermissibly denied any constitutional right by being subjected to an injunction in a manner that has been clearly established and deemed proper for over 100 years.  <u>Fed. R. Civ. Proc.</u> 65(d); <u>In re Lennon,</u> 166 U.S. 548, 554 (1897).

Even if an inquiry into how the terms of the injunction impair Plaintiffs' liberty interests is material to the issue in this case—which it is not—Plaintiffs still will be unable to show how the injunction impermissibly deprives them their rights. Plaintiffs' purported harms as a result of being subject to the injunction are that they have voluntarily refrained from engaging in activities that are not prohibited by the Order.  Nothing in the Order prohibits Plaintiffs from petitioning government or otherwise engaging in lawful expressive activities.  Indeed, Plaintiffs' alleged fears

1  are self-imposed and made far worse due to third parties, other than the Defendants
2  in this action.

3      Neither does Plaintiffs' alleged fear of arrest for inadvertently being in the
4  same place as other associates of the OVC subject to the Order constitute an
5  impermissible deprivation of a constitutional right due to the injunction.  The Ninth
6  Circuit has held that "incidental contacts" do not constitute an "association" that
7  people "of common intelligence" need not guess at the meaning of to ensure they
8  are engaging in lawful activity.  United States v. Soltero, 510 F.3d 858, 866-67 (9th
9  Cir. 2007).  Moreover, Courts have determined that similar Orders fairly imply a
10  knowledge element that requires the prosecuting agency to establish an individual's
11  own knowledge of associate gang membership to meet their burden of proof.  See,
12  People ex rel. Gallo v. Acuna, 14 Cal.4th 1090, 1117 (1997).

13      While Plaintiffs contend that due to the injunction, they cannot engage in
14  various day-to-day activities, all of which are allegedly innocuous and lawful, the
15  injunction does not prohibit Plaintiffs from doing the very things they complain that
16  they cannot do.  Plaintiffs will be unable to show that the injunction restricts them
17  from visiting their family, or prevents them from attending church, going to the
18  Library, eating at restaurants, or participating in protests.  The injunction prohibits
19  only activities which Judge Makino found constituted a ***public nuisance***.  Therefore,
20  Plaintiffs are only deprived of the ability to commit a public nuisance.  The court in
21  Iraheta v. Superior Court rejected a similar request to recognize a due process liberty
22  interest based on a threatened violation of the petitioner's First Amendment rights.
23  Iraheta v. Superior Court, 70 Cal. App. 4th 1500, 1511 (1999).  "[I]t cannot be said
24  that petitioners' interests in continuing to engage in conduct which constitutes a
25  public nuisance, is 'a compelling one, ranked among the most basic of civil rights.'"
26  Id.

27      Plaintiffs' alleged harm that they cannot associate with their family and
28  friends due to the injunction is also meritless and not actionable.  Courts have held

that there is no First Amendment protection for collective public activities of gang members.  People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 45 (2007) (citing to People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1110 (1997). "Freedom of association, in the sense protected by the First Amendment, does not extend to joining with others for the purpose of depriving third parties of their lawful rights."  People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1112 (1997) (finding that the gang was not an association of individuals formed the purpose of engaging in protected speech or religious activities and therefore the First Amendment right of association did not extend to such association); see also Madsen v. Women's Health Center, Inc., 512 U.S 753, 776 (1994); see also Dallas v. Stanglin, 490 U.S. 19, 25 (1989) (holding that the Constitution does not recognize a generalized right of social association).

Even association with family members is not burdened to the extent that Plaintiffs complain.  This same argument was made and rejected in People v. Englebrecht, 88 Cal. App. 4th 1236, 1263 (2001).  The court held that there was limited impact on family relationships because the injunction placed no restrictions on contact between individuals outside the target area and even so, the injunction merely requires such association not occur in public.  Id. at 1263.  Similarly here, it is undisputed that the injunction only applies within the Safety Zone and Plaintiffs are free to associate with family anywhere outside the Safety Zone, and even within the Safety Zone outside the public view.

> While the injunction may place some burden on family contact in the target area, it by no means has, in our view, a fundamental impact on general family association. [¶] Any attempt to limit the familial associational impact of the injunction would make it a less effective device for dealing with the collective nature of gang activity . . . [s]uch a limitation on the injunction would in general also make it more difficult to enforce.

**16**

Id. at 1263; see also, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 46 (2007).  Just as in Engelbrecht, the injunction here, does not impermissibly burden Plaintiffs' associational rights.

Plaintiffs also cannot show that the injunction infringes upon their right to free speech and expression in an impermissible manner in violation of the Constitution.  Indeed, such an argument was made and rejected in Engelbrecht where the court stated, "[A gang] injunction, the purpose of which is to enjoin conduct violating the rights of others, is not a content-based regulation of speech even though the injunction may affect the expression of a particular point of view or position.  This is so because the basis or purpose of the injunction is not to interfere with the content of the speech affected but the enjoined conduct and the deprivation of rights to which it relates." People v. Englebrecht, 88 Cal. App. 4th 1236, 1265(2001).

Insofar as the injunction does have an incidental, unintended affect on free speech, such burden on speech is no more than is necessary to serve the significant government interest involved of protecting the areas within the targeted Safety Zone and those within such areas from the nuisance activities of the gang.  See, People v. Englebrecht, 88 Cal. App. 4th 1236, 1266 (2001).

**2.      The Risk Of An Erroneous Deprivation of Such Interest Through The Procedures Used, And The Probable Value, If Any, Of Additional Procedural Safeguards.**

Plaintiffs cannot show that the procedures used in the state action would lead to erroneous decisions, nor can Plaintiffs prove that any additional or substitute procedures would provide greater protection.  Inasmuch as Plaintiffs must show they the procedures used in the state action risked error, Plaintiffs cannot do so because Plaintiffs' own inaction and failure to use the procedures precludes such a showing.  Indeed, Plaintiffs failed to utilize the Defendant's Petition for Removal Process and failed to intervene in the state action or appeal any of the state proceedings.  Even

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

during a recent charge of contempt of the injunction, Plaintiff Randy Bastida did not challenge its enforcement against him, but instead plead guilty to contempt.  All these procedures within the state court system have been put in place so as to eliminate risks of erroneous deprivation.  However, Plaintiffs failed to utilize any such procedures.

Without reason, Plaintiffs make much of the fact that that the Defendants' determinations of each individual's gang involvement was subjective and discretionary.  However, law enforcement is given broad discretion to make subjective determinations in ferreting crime and prosecuting criminals.  United States v. Batchelder, 442 U.S. 114 (1979); see generally Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199 (1989); Kompare v. Stein, 801 F.2d 883, 892 (7th Cir. 1986).

Moreover, the determination of gang participation was not unchecked as Plaintiffs like to argue.  Indeed, Defendant OCDA reviewed and analyzed the determinations made by OPD—who had years of collective knowledge and experience with OVC and its members—in making its assessments and presented evidence before Judge Makino of the state court.  Judge Makino also reviewed the evidenced during the preliminary injunction proceedings.  Judge Makino was well aware that the permanent order would run to non-parties in active concert with the OVC.  Indeed, he signed the order with just that language.  Moreover, OCDA was careful not to serve the injunction on those individuals that Judge Makino denied the preliminary injunction against absent some new countervailing information about the individual's gang participation.[2]  Accordingly, the risk of erroneous deprivation was slight.[3]

---

[2] One such individual was Anna Cooper who after being dismissed from the State Action was found harboring OVC members and parolees in her house.  In addition, a firearm was found inside her toilet.

(footnote continued)

Finally, the issue of whether or not the individuals are gang members "is not a complex issue. [Plaintiffs] need neither a scientific expert nor legal expertise to admit or deny the allegation of gang membership." Iraheta v. Superior Court 70 Cal App. 4th 1500, 1514 (1999).  Despite Plaintiffs' experts' contrary opinions, the Iraheta court held that the issue of gang membership was not so complex to require additional procedures in order to prevent the risk of error.  Id.   This is especially true when gang unit officers, like OPD, are out in the streets in constant contact with these very individuals, who can attest to the individual's gang participation.

Accordingly, Plaintiffs cannot show that the law demands any greater protections than those presently available, or that any other procedures are necessary to prevent erroneous deprivation of rights.  Greater protections are not required in gang injunction cases in order to protect the right allegedly being infringed upon. See generally, People v. Englebrecht, 88 Cal. App. 4th 1236, 1253 (2001).  Indeed, in assessing whether due process required the right to a jury trial in gang injunction cases, the court in Englebrecht found that the appellant's physical liberty was not directly a stake and that the injunction only curtailed his associational and expressive activities in a limited geographic area and only in a limited manner.  Id. Accordingly, the court held that no such protections were required to afford due process of law.  People v. Englebrecht, 88 Cal. App. 4th 1236, 1253 (2001) "The rights involved in this case, while important, are not as significant as the interest in physical liberty or parental rights." People v. Englebrecht, 88 Cal. App. 4th 1236, 1253 (2001).

---

[3] Plaintiffs argue there was actual error in the State Action as the State Court refused to issue the injunction against a certain number of individuals, but fail to mention that the majority of such individuals were juveniles who the Court refused to issue an injunction against in a blanket ruling based on legal considerations.

1     To be clear, Plaintiffs can use the opt-out process that they have always had

2 available, they can halt participation with the OVC gang so as to not have a

3 permanent order against them, they can intervene in the State Action, and they can

4 make arguments during contempt proceedings.  Plaintiffs have adequate procedures

5 available and will not be able to show that ***additional*** procedures are necessary to

6 protect their interests.

7     Federal courts have reached similar conclusions regarding pre-deprivation

8 hearings.  See, Mathews v. Eldridge 424 U.S. 319, 334-35 (1976) (the costs of

9 additional procedures outweighed the limited need); see also; Brittain v. Hansen,

10 451 F.3d 982, 999 (9th Cir. 2006) (pre-deprivation hearing not necessary before

11 child visitation rights denied); Brewster v. Board of Education, 149 F.3d 971 (9th

12 Cir. 1998) (finding the process given before right was deprived was adequate to not

13 require greater pre-deprivation hearings).  The United States Supreme Court stated

14 that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on

15 the proposition that full relief cannot be obtained at a postdeprivation hearing."

16 Mathews v. Eldridge 424 U.S. 319, 331(1976).  The Plaintiffs here cannot make

17 such a colorable showing.  Indeed, such arguments are contrary to well-settled

18 federal law on injunctions, applying Fed. R. Civ. Proc. 65(d) which clearly provides

19 that injunctions can run to individuals who are nonparties and no individualized

20 hearing must be made unless and until there is a claim of contempt of such order.

21 See Zenith Radio Corp. v. Hazeltine Research Inc. 395 U.S. 100, 112 (1969); see

22 also Vuitton et Fils S. A. v. Carousel Handbags, 592 F.2d 126, 129 (2d Cir. 1979);

23 Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 43 (1st Cir.

24 2000).  To be clear, Plaintiffs still have the option of raising their objections now by

25 intervening in the state court action as the Plaintiffs did in People v. Colonia

26 Chiques, 156 Cal. App. 4th 31 (2007) and moving to modify or dissolve the

27 injunction or set aside the default judgment.  See, Iraheta v. Superior Court, 70 Cal.

28 App. 4th 1500, 1514, n.4 (1999); see also Cal Code of Civ. Proc. § 533.

**20**
**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

### 3.   The Government's Interests and Burden

"The state has not only a right to 'maintain a decent society' but an obligation to do so." People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1102 (1997) (citing Jacobellis v. Ohio, 378 U.S. 184, 199 (1964).  The Defendant had an interest and a duty to protect the community of Orange through the public nuisance abatement action.  Part of this duty was to not delay in obtaining the injunction.  Defendant was forced to reconcile between affording procedural protections to the individuals subject to the injunction, while adequately and promptly protecting the community and its residents, which the Defendant properly did.  See People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1102 (1997).

Plaintiffs cannot show any authority that provides that in a gang injunction case, the government must provide a pre-service hearing, and for good reason— there is no such authority.  Rather, the opposite is true.  Courts have recognized that it is simply not practical to require the District Attorney and other similarly situated government agencies, to name the gang members individually as defendants or make any pre-deprivation individualized showing.  See, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 41 (2007)( "[I]t is simply not practical to require [the district attorney] to name Colonia Chiques gang members individually as defendants. There are approximately 1,000 members, and membership is continually changing. New members are joining the gang, while old members are leaving it or becoming inactive. If the gang could not be sued, respondent would have to bring a new action for injunctive relief against each new member.") "The Legislature surely did not intend to impose such an onerous burden on officials who are trying to mitigate California's 'state of crisis which has been caused by violent street gangs." Id. (quoting Pen. Code § 186.21).

Defendant will show by testimony and evidence that the administrative and fiscal burden on the government to obtain an injunction in the manner Plaintiffs suggest is highly significant, impractical, and unreasonably burdensome on the

government.  Accordingly, Plaintiffs' prayer for relief and to impose this heavy burden on the Government is not only impractical, but in direct conflict with clearly established law.  See, People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1125 (1997); see also, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 44 (2007) ("[S]uch individualized proof is *not a condition to entry of injunctive relief* based on a showing that it is the gang, acting through its individual members, that is responsible for the conditions prevailing in the affected area.").  See Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100, 112 (1969); Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 43 (1st Cir. 2000) (The fact that injunctions run to non-parties does not risk a due process violation because due process is afforded during contempt proceedings -- "Contempt proceedings operate to ensure that nonparties have had their day in court."); United States v. Baker, 641 F.2d 1311, 1315 (9th Cir. 1981).

Plaintiffs' nebulous prayer for a constitutionally-adequate hearing is, in essence, a request for a trial before being served with the injunction.  While financial costs and burdens alone are not of controlling weight in the Mathews analysis, "the Government's interest, and hence that of the public, in conserving scare fiscal and administrative resources is a factor that must be weighted." Mathews v. Eldridge, 424 U.S. 319, 348 (1976).  See also, Iraheta v. Superior Court 70 Cal. App. 4th 1500, 1512 (1999) (in denying plaintiffs' request for appointment of counsel in a gang injunction case, the court found the interest in avoiding the expense of additional procedures, appointed counsel, and the cost of lengthened proceedings was "sufficient to overcome petitioners' interest in engaging in activities within the target areas which deprive other people of the comfortable enjoyment of their lives and property.").

/ / /

/ / /

## IV.   PLAINTIFFS' CLAIMS OF DEPRVIATION OF PROCEDURAL DUE PROCESS IN VIOLATION OF ARTICLE I, SECTION 7(a) OF THE CALIFORNIA CONSTITUTION ARE MERITLESS AS A MATTER OF LAW.

Plaintiffs' claim that Defendant's conduct was in violation of California Constitutional law is also feckless.  Indeed, Plaintiffs ignore the clear line of California cases where strikingly similar challenges to their own were rejected. As California Courts have repeatedly found, "[t]o render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction was issued . . ., so long as he appears to have had actual notice."  In re Orlando C., 2010 Cal. App. Lexis 1193 (2010) (certified for publication on July 20, 2010) (citing, People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1124 (1997)).

Accordingly, it is of no consequence that Plaintiffs were dismissed and subsequently served with the permanent injunction as Plaintiffs had notice of the OVC injunction – a point proven by their prosecution of this case and will also be shown at trial.  As with the federal courts, California law makes clear that for purposes of gang injunctions, Plaintiffs never had to be named in the lawsuit in the first place.  Id. at 1125.  In either case, the injunction properly binds the gang and its agents. See, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 41 (2007) (citing, People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1125 (1997) (Finding it immaterial whether the gang is sued alone or individuals are named as defendants; In either case, the court would apply "the familiar rule that both the organization and the members through which it acts are subject to injunctive relief.").

In Colonia Chiques, the prosecutor proceeded only against the gang in seeking a gang injunction, which the Court of Appeal found to have "properly encompassed nonparties who were active members of Colonia Chiques or who acted

in concert with the gang." People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 42 (2007).  The Court further provided:

> In matters of injunction. . . it has been a common practice to make the injunction run also to classes of persons through whom the enjoined party may act, such as agents, servants, employees, aiders, abettors, etc. though **_not parties to the action,_** and this practice has always been upheld by the courts, and any of such parties violating its terms with notice thereof are held guilty of contempt for disobedience of the injunction.

Id. (Emphasis added); see also, Pitchess v. Superior Court 2 Cal. App. 3d 653, 656 (1969); Berger v. Superior Court of Sacramento County, 175 Cal. 719, 721 (1917).

The California jurisprudence on the subject of gang injunctions has gone even further and courts have held that not only can an individual be subject to an injunction without being named, but there also needs to be **_no individualized showing that he or she is benefitting or furthering the gang_**.  See, People ex Rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1125 (1997); see also, People ex rel. Totten v. Colonia Chiques, 156 Cal. App. 4th 31, 44 (2007) ("[S]uch individualized proof is **_not a condition to entry of injunctive relief_** based on a showing that it is the gang, acting through its individual members, that is responsible for the conditions prevailing in the affected area.")(Emphasis added).

Court decisions have repeatedly rejected Constitutional challenges on the same grounds as Plaintiffs allege here.  This is so because a non-party served with an injunction will have opportunities to contest the injunction. As the Court in Acuna explained, "[a]dditional proceedings will be required to enforce the specific terms of the . . . injunction.  Should contempt proceedings ensue, each individual defendant will have an opportunity to contest any claim by the City that he or she has violated specific terms of the . . . injunction." People ex rel. Gallo v. Acuna, 14

Cal.4th 1090, 1125 (1997).  In the meantime, Plaintiffs may intervene in the state proceedings and voice whatever concerns they may have. See, Cal. Code Civ. Proc. § 387 (Providing that anyone served with an injunction may intervene in the litigation -- "[A]ny person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding…"). Thereafter, Plaintiffs would be free to pursue their remedies in the California appellate system if so inclined.

Even employing the balancing test under the California Constitution, Plaintiffs still are unable to meet their burden for all the reasons as explained under the Mathews test.  See also People v. Ramirez, 25 Cal. 3d 260 (1979).  Indeed, California courts use the Mathews factors with the addition of a fourth factor: the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official.  See, People v. Allen, 44 Cal. 4th 843, 862-63 (2008).  In applying this fourth factor, courts have stated due process means that the individual must be given the opportunity to be heard at a meaningful time and in a meaningful manner.  See, id. at 869.  Indeed, as Defendant has argued time and again, Plaintiffs will be given the opportunity to be heard during contempt proceedings as provided by law, thereby providing adequate due process.  See, Ross v. Superior Court, 19 Cal. 3d 899, 906 (1977) (Nonparty agent of enjoined defendant bound by injunction, rejecting due process arguments); see also Ryan v. Cal. Interscholastic Fed., 94 Cal. App. 4th 1048, 1072 (2001); American Liberty Bail Bonds, Inc. v. Garamendi, 141 Cal. App. 4th 1044, 1058 (2006).  Furthermore, Plaintiffs can also contact the OCDA's office and request to opt-out of the injunction by putting evidence forth that they are not gang participants.[4]

---

[4] One such individual, Shawn Sandoval, informally opted out of the injunction by
(footnote continued)

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

# V.  <u>PLAINTIFFS' PROPOSED INJUNCTION IMPROPERLY INTRUDES INTO ONGOING STATE COURT LITIGATION AND VIOLATES THE OCDA'S RIGHT TO ADVOCATE FREELY.</u>

Plaintiffs apparently seek an injunction in this case barring the attorneys working in the Orange County District Attorney's Office from enforcing the terms of the state court anti-gang injunction against Plaintiff-Petitioners without first providing them with a full constitutionally adequate hearing. On its face, Plaintiffs' proposed injunction would violate the First Amendment right of Orange County District Attorneys to advocate before a sitting Superior Court judge.  It would be difficult to conceive of a proposed directive more injurious to our system of justice. <u>See</u>, <u>Legal Services Corp. v. Velazquez</u>, 531 U.S. 533 (2001); <u>Eng v. Cooley</u>, 552 F.3d 1062 (9th Cir. 2009).

<u>Legal Servs. Corp. v. Velazquez</u>, 531 U.S. 533 (2001) is perhaps the leading case on this issue and its facts and holding merit somewhat extended discussion here. The issue in <u>Velazquez</u> involved the constitutionality of a Congressional statute which conditioned federal payments to attorneys, based on the content of their courtroom advocacy on behalf of their clients. <u>Id.</u>  After review of pertinent law, the Supreme Court struck down the challenged statute as unconstitutional:

> Restricting. . . attorneys in . . . presenting arguments and analyses to the courts distorts the legal system . . ..Interpretation of the law and the Constitution is the primary mission of the judiciary when it acts within the sphere of its authority to resolve a case or controversy. [Citation omitted.] An informed, independent judiciary presumes an informed, independent bar.

contacting the OCDA's office and reached an agreement wherein he was removed from the injunction.

1    Under [the challenged statute], however, cases would be
2    presented by . . . attorneys who could not advise the courts of
3    serious questions of statutory validity. The disability is
4    inconsistent with the proposition that attorneys should present all
5    the reasonable and well-grounded arguments necessary for
6    proper resolution of the case. By seeking to prohibit the analysis
7    of certain legal issues and to truncate presentation to the courts,
8    the enactment under review prohibits speech and expression
9    upon which courts must depend for the proper exercise of the
10   judicial power. . ..

11   Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 544-545 (2001).

12   The Velazquez Court rightly found this result intolerable:
13   If the restriction on speech and legal advice were to stand, the
14   result would be two tiers of cases. In cases where [restricted]
15   counsel were attorneys of record, there would be lingering doubt
16   whether the truncated representation had resulted in complete
17   analysis of the case, full advice to the client, and proper
18   presentation to the court. The courts and the public would come
19   to question the adequacy and fairness of professional
20   representations when the attorney, either consciously to comply
21   with this statute . . ., avoided all reference to questions of
22   statutory validity and constitutional authority. A scheme so
23   inconsistent with accepted separation-of-powers principles is an
24   insufficient basis to sustain or uphold the [attempted
25   Congressional] restriction on speech. . ..The statute is an attempt
26   to draw lines around [a government] program to exclude from
27   litigation those arguments and theories Congress finds

28

unacceptable but which by their nature are within the province of the courts to consider.

Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 546 (2001); see, Eng v. Cooley, 552 F.3d 1062, 1069 (9th Cir. 2009) ("[A]s Velazquez recognized, . . .counsel must be free of state control and unfettered in the exercise of independent judgment on behalf of the client . . .. ***There can be little doubt, then, that state action designed to . . . chill an attorney's advocacy for his or her client strikes at the heart of the First Amendment.***") (Emphasis added).

Here, Plaintiffs' proposed injunction would work the very injustice condemned by the Velazquez and Eng Courts. Indeed, Plaintiffs' proposed injunction would ***effectively silence*** the District Attorneys' Office as regards an existing state court injunction. The District Attorneys' Office would be permitted to advocate, if at all, only in support of an amendment to the Superior Court's order providing Plaintiffs with, what they vaguely term, "a full constitutionally adequate hearing" before service of the injunction.  If the Superior Court declined to accept the District Attorneys' advocacy for Plaintiffs, the only option left to the District Attorney would be to appeal and advocate for Plaintiffs' position in that forum. Failing relief on appeal, the District Attorney would be definitively ***silenced*** in Superior Court and the Superior Court would be deprived of advocacy it needs to properly administer its injunction. See, Legal Services Corp. v. Velazquez, 531 U.S. 533, 545 (2001) ("By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which ***courts must depend*** for the proper exercise of the judicial power. . ..")(Emphasis added.); Eng v. Cooley, 552 F.3d 1062, 1069 (9th Cir. 2009) ("[A]s Velazquez recognized, . . .counsel must be free of state control and unfettered in the exercise of independent judgment on behalf of the client . . .. ***There can be little doubt, then, that state action designed to . . . chill an attorney's advocacy for his or her client strikes at the heart of the First Amendment.***") (Emphasis added.)

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

Plaintiffs' proposed injunction would also be an improper intrusion into the Superior Court's right to supervise its own injunction. This is particularly true where, as here, Plaintiffs have yet to even attempt to have their concerns with the Superior Court's injunction addressed by the Superior Court. In such circumstances, courts have found that "a federal court should abstain when a nonparty to a state court injunction brings a [Constitutional] challenge to the injunction in federal court before requesting relief from the state court." Gootfried v. Medical Planning Services, Inc. 142 F.3d 326, 332 (6th Cir. 1998); see, Hoover v. Wagner 47 F.3d 845 (7th Cir. 1995) (Declining to supervise state injunction, on the finding that it would constitute an "affront to [judicial] comity.")

Gootfried v. Medical Planning Services, Inc. 142 F.3d 326 (6th Cir. 1998) is illustrative of the forgoing principles. A doctor obtained a permanent injunction against the protest activities of certain anti-abortion organizations, those acting in concert with them, and all other persons who have notice of the injunction. Id. An anti-abortion activist filed suit in federal court 10 years later to declare the injunction unconstitutional on its face and as applied to her and sought an injunction against its enforcement. Id.

The Gootfried court held that it should abstain from exercising jurisdiction because the state court was in the better position to address any deficiencies in its injunction and modify it to address plaintiff's challenges if need be. Id. at 332 ("Abstention is the proper course here because the state court, unlike the federal court, can modify its injunction or narrowly construe it in light of any intervening legal developments."). Moreover, Gootfried found that federal supervision of the state trial court would violate considerations of state-federal judicial comity. Id. at 332 ("[A] federal court should abstain when a nonparty to a state court injunction brings a [Constitutional] challenge to the injunction in federal court before requesting relief from the state court."). See, Hoover v. Wagner 47 F.3d 845, 851 (7th Cir. 1995) (Denying federal supervision of state injunction -- "[T]he difficulty

1   of framing a useful injunction when considered in conjunction with the affront to

2   comity that such an injunction would constitute . . . convinces us that this suit is an

3   inappropriate invocation of the equity powers of the federal courts. . ..[I]t would be

4   an abuse of discretion, in light of the principles of equity and comity . . . to grant the

5   relief sought by the plaintiffs.").

6          Here again, Plaintiffs can offer no good reason why they cannot appear in

7   state court and advocate for an amendment to the Superior Court's order providing

8   Plaintiffs with, what they vaguely term, "a full constitutionally adequate hearing"

9   before service of the injunction.  In such circumstances, this Court should decline to

10  hear Plaintiffs' back-handed attack on an existing state court injunction, in deference

11  to the on-going Superior Court injunction case.

12  **VI.   PLAINTIFFS' REQUEST FOR HABEAS CORPUS IS MERITLESS.**

13         A federal court may only grant a petition for writ of habeas corpus if the

14  petitioner can show that he is ***in custody*** in violation of the Constitution.  28 U.S.C.

15  § 2441.  Traditionally, the availability of habeas corpus petitions has applied

16  primarily to those incarcerated in jail or prison, of which Plaintiffs were admittedly

17  not at the relevant time when their Complaint was filed.  While decisions

18  interpreting the "in custody" requirement of habeas corpus relief have broadened its

19  application to other instances, such as a convict released on his own recognizance

20  (Hensley v. Municipal Court, 411 U.S. 345, 351 (1973)), or a parolee released into

21  the custody of the parole board (Jones v. Cunningham, 371 U.S. 236, (1963)), the

22  distinguishing characteristic setting those cases apart from the one at hand is that "in

23  the end, 'an individual who is required to be in a certain place –or in one of several

24  places –to attend meetings or to perform services, is clearly subject to restraints on

25  his liberty not shared by the public generally.'"  Williamson v. Gregoire, 151 F.3d

26  1180, 1183 (9th Cir. 1998) (quoting Barry v. Bergen County Probation Dep't, 128

27  F.3d 152, 161 (3rd Cir. 1997)).

28

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

Here, Plaintiffs do not suffer from any compulsion to be in a certain place, like parolees or convicts released on their own recognizance. Neither will Plaintiffs be able to show that the injunction precludes them from the things that they could otherwise do. Indeed, the injunction does not prohibit the very things that Plaintiffs complain of and further, it applies in a limited geographic area, where only one of the four named Plaintiffs live. Thus, they are not presently "in custody" for purposes of habeas corpus relief.

However, where an individual is alleging he is "in custody" pursuant to a state court judgment, 28 U.S.C. § 2254 is the exclusive remedy provided him. 28 U.S.C. § 2254 "confers jurisdiction on a district court to issue 'a writ of habeas corpus in behalf of a person in custody pursuant to the ***judgment of a State court*** . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) (quoting 28 U.S.C. § 2254 (a)) (Emphasis added). Thus, where a person is challenging the effect of a state court judgment on his liberty, he must comply with the requirements specified by section 2254. See White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) (citations omitted).

/ / /

/ / /

/ / /

/ / /

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**

28 U.S.C. § 2254 requires a plaintiff who is requesting habeas corpus relief from a state court judgment to fully exhaust the state court remedies available before requesting federal relief.  Here, Plaintiffs' allegations arise directly out of the injunction order issued by California Superior Court Judge Makino and thus they must comply with section 2254's limitations imposed on habeas corpus relief.  Plaintiffs cannot argue that they are bound by the terms of a State Order, yet backtrack and argue that they are not when it benefits them to make such an argument.  Plaintiffs' failure to exhaust their remedies precludes habeas relief.

DATED:  November 2, 2010                 **Respectfully submitted,**

                                          **LYNBERG & WATKINS**
                                          A Professional Corporation


                              By:  _____/S/_____
                                          **NORMAN J. WATKINS**
                                          **S. FRANK HARRELL**
                                          **MELISSA D. CULP**
                                          Attorneys for Defendants/Respondents,
                                          **ORANGE COUNTY DISTRICT
                                          ATTORNEY**

**DEFENDANT ORANGE COUNTY DISTRICT ATTORNEY'S TRIAL BRIEF**