HECTOR O. VILLAGRA (BAR NO. 177586)
hvillagra@aclu-sc.org
BELINDA ESCOBOSA HELZER (BAR NO. 214178)
bescobosahelzer@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
2140 W. Chapman Ave., Suite 209
Orange, California 92868
Telephone: (714) 450-3962
Facsimile: (714) 450-3969

MARK D. ROSENBAUM (BAR NO. 59940)
mrosenbaum@aclu-sc.org
PETER BIBRING (BAR NO. 223981)
pbibring@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

Attorneys for Plaintiff-Petitioners
[Additional Counsel on Following Page]

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL VASQUEZ, et al.,<br><br>          Plaintiff-Petitioners,<br><br>     vs.<br><br><br>TONY RACKAUCKAS, et al.,<br><br>          Defendant-Respondents. | Case No: SACV09-1090 VBF(RNBx)<br><br>The Honorable Valerie B. Fairbank<br>Courtroom 9<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>**CLASS ACTION**<br><br>Complaint Filed: Sept. 23, 2009<br><br>Trial Date: November 9, 2010 |

1   JOSEPH J. YBARRA (Bar No. 218130)
    Joseph.Ybarra@mto.com
2   JACOB S. KREILKAMP (Bar No. 248210)
    Jacob.Kreilkamp@mto.com
3   LAURA D. SMOLOWE (Bar No. 263012)
    Laura.smolowe@mto.com
4   MARINA A. TORRES (Bar No. 259576)
    Marina.Torres@mto.com
5   MUNGER, TOLLES and OLSON LLP
    355 South Grand Avenue, 35th floor
6   Los Angeles, CA 90071-1560
    Telephone: (213) 683-9100
7   Facsimile: (213) 687-3702

8   SARALA V. NAGALA (Bar No. 258712)
    Sarala.Nagala@mto.com
9   MUNGER TOLLES and OLSON LLP
    560 Mission, 27th Floor
10  San Francisco, CA 94105
    Telephone: (415) 512-4000
11  Facsimile: (415) 512-4077

12  Attorneys for Plaintiffs-Petitioners

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS.  . . 3

II.  PLAINTIFFS ARE NOT REQUIRED TO EXHAUST THEIR HABEAS CLAIM UNDER §2241.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. INJUNCTIONS THAT DEPRIVE INDIVIDUALS OF THEIR LIBERTY INTERESTS MUST COMPORT WITH DUE PROCESS. . . . . . . . . . . . 8

IV.  OCDA'S REMAINING AFFIRMATIVE DEFENSES ARE ALSO MERITLESS.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                               **Page(s)**

*Agriesti v. MGM Grand Hotels, Inc.,*
    53 F.3d 1000 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Antonelli v. Warden, U.S.P. Atlanta,*
    542 F.3d 1348 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Eng v. Cooley,*
    552 F.3d 1062 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gentile v. State Bar of Nevada,*
    501 U.S. 1030 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gilbertson v. Albright,*
    381 F.3d 965 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gottfried v. Medical Planning Services, Inc.,*
    142 F.3d 326 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7

*Green v. City of Tucson,*
    255 F.3d 1086 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Healy v. James,*
    408 U.S. 169 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hoover v. Wagner,*
    47 F.3d 845 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7

*Legal Services Corp. v. Velasquez,*
    531 U.S. 533 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 14

*McCoy v. Stewart,*
    282 F.3d 626 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*N.A.A.C.P. v. Clairborne Hardware Co.,*
    458 U.S. 886 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*O'Sullivan v. Boerckel,*
    526 U.S. 838 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Outdoor Media Group, Inc. v. City of Beaumont,*
    506 F.3d 895 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Precision Instr. Manufacturing Co. v. Automobile Maintenance Machine Co.,*
    324 U.S. 806 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

*Railroad Commission of Texas v. Pullman Co.*,
    312 U.S. 496 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Trustees of S. Cal. Bakery Drivers Sec. Fund v. Middleton*,
    366 Fed. Appx. 810 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 14

*Ex Parte Young*,
    209 U.S. 123 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zal v. Steppe*,
    968 F.2d 924 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATE CASES**

*Green Trees Enterprises v. Palm Springs Alpine Estates*,
    66 Cal. 2d 782 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES**

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §1364 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Federal Rule of Civil Procedure 65 . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Welfare & Institutions Code § 825 . . . . . . . . . . . . . . . . . . 2

1    Plaintiffs Manuel Vasquez, Miguel Bernal Lara, Gabriel Bastida, and Randy

2  Bastida, on their own behalf and on behalf of Class Plaintiffs (collectively

3  "Plaintiffs"), submit this trial brief under Local Rule 16-10.

4  **INTRODUCTION**

5    Plaintiffs are residents of the County of Orange who have been informed by

6  Defendants, the Orange Police Department ("OPD") and Orange County District

7  Attorney ("OCDA"), that they are suspected of being gang members, and on the

8  basis of that suspicion, and on pain of arrest, they must submit to parole-like

9  restrictions contained in a gang injunction (the "Order"): Plaintiffs will be arrested

10  and face six months in jail if they appear in public between 10 p.m. and 5 a.m., if

11  they associate with gang members or people accused of being gang members (even

12  if the person suspected is a family member, and even if the association is to

13  participate in protected First Amendment activity, or is at school, at work or

14  otherwise not in any way gang-related); if they consume alcohol anywhere in

15  public view or remain in public in the presence of alcohol; if they confront, annoy,

16  challenge or provoke anyone in public, or if they violate any law, however minor.

17  These restrictions apply over nearly four square miles that covers a neighborhood

18  many of them live or lived in, attend or attended school, where friends and family

19  reside, and where they eat, play, work or shop.  These restrictions are permanent

20  — they have no sunset or expiration date.

21    Plaintiffs are subject to these restrictions at the whim of Defendants — there

22  has never been a hearing before a judge to decide whether they are appropriately

23  permanently imposed, nor have Plaintiffs been presented with all the evidence

24  against them.  Defendants originally sought to impose the restrictions on Plaintiffs

25  by proving a civil claim against them in state court.  But when their case was

26  reassigned to a new judge who questioned their evidence and their tactics, and

27  individual defendants began to appear in court to contest Defendants' allegations

28  and demanding access to the evidence, and the State Court began denying

preliminary injunctions against some Plaintiffs, Defendants "cut and run." They dismissed Plaintiffs from the State Action — they dismissed every defendant who had entered an appearance and sought to contest the charges and every unrepresented juvenile because the State Court was unwilling to impose judgments against them without guardians, thereby obtaining a judgment only by default against defendants who had not appeared, including the gang as an unincorporated association. But Defendants did not adhere to their obligations as public officials to act fairly, seek justice, and uphold the Constitution. Instead they performed an end-run around the State Court, by unilaterally subjecting Plaintiffs to the Order entered by default against the gang, after denying Plaintiffs the opportunity for access to evidence against them as well as the opportunity to have a neutral court evaluate that evidence to determine whether they should permanently be subject to the restrictions. By imposing such restrictions on Plaintiffs' liberty without providing any prior meaningful opportunity to challenge the evidence on which application of Order to them was based, Defendants violated Plaintiffs' Due Process rights.

As is evident from Defendants' trial exhibits, which include over 12,000 pages of police reports, STEP notices, FI cards, and photographs, some of which date back to the late 1990's, as well as their most recent 76-page "graphic/illustrative" exhibit summarizing Plaintiffs' alleged police contacts,[1] Defendants intend to invoke the "thuggery" of the street gang to deflect attention away from the unfairness of subjecting individuals to parole-like restrictions

---

[1] Plaintiffs object to the introduction of this evidence on the basis that such evidence is irrelevant (FRE 401, 402), unduly prejudicial and a waste of time (FRE 403); lack of foundation (FRE 602); hearsay (FRE 801, 804, 805); improper impeachment (FRE 608); improper character evidence (FRE 404); and that it violates the right to privacy in juvenile records under California Welfare & Institutions Code §825. *See* Pls.' Mot. in Limine No. 1, dated Oct. 8, 2010; Pls.' Mot. in Limine No. 8, dated Oct. 8, 2010; and Pretrial Exhibit Stipulation, dated Nov. 1, 2010.

1   without process.  Defendants are trying to hide their own unlawful actions by

2   attempting to introduce hours of testimony and thousands of pages of documents

3   containing irrelevant and prejudicial evidence.  Defendants should have presented

4   this evidence before the State Court and allowed Plaintiffs to challenge and

5   contest it before subjecting them to the Order — this case is not whether the Order

6   should have issued, but about Defendants failure to provide Plaintiffs with Due

7   Process.

8   **ARGUMENT**

9           Plaintiffs have set forth the elements of their claims and the evidence

10   supporting each element in their Memorandum of Contentions of Fact and Law,

11   which is hereby incorporated by reference.  For the sake of brevity, those

12   arguments are not set forth again here.  Rather, this brief responds to the claims

13   made by Defendants in their Memorandum of Contentions of Fact and Law, in

14   accordance with Local Rule 16-10.

15           The gravamen of Plaintiffs' claims is that Defendants OCDA and OPD

16   violated their right to due process by ordering them to comply with the terms of

17   the Order upon pain of arrest after effectively depriving them of the opportunity to

18   contest the order.   While Plaintiffs have at times pointed to concerns that

19   provisions of the underlying state court Order may be unconstitutional or may not

20   be supported by evidence in the case, they raise these concerns here not to have

21   them adjudicated by this Court, but to emphasize the importance of the state court

22   proceedings that they were denied and the liberty interests that Defendants

23   implicated by subjecting them to the Order.  Plaintiffs in this Court therefore do

24   not challenge the Order or any of its terms, but only Defendants' action in

25   applying it to them by threatening arrest and prosecution for violation of its terms.

26   **I.        THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS.**

27           This Court has subject matter jurisdiction over Plaintiffs' claims.

28                                          3

1    Defendants' actions, taken under color of state law, violated Plaintiffs' rights to

2    procedural due process rights under the Fourteenth Amendment to the United

3    States Constitution.  Moreover, mandating that Plaintiffs conform their conduct to

4    the Order upon pain of prosecution constitutes custody without due process.  Both

5    claims raise questions of federal law over which this Court generally has

6    jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Additionally, this Court has

7    supplemental jurisdiction over the state constitutional claim under 28 U.S.C.

8    §1364(a).  (*See* Ruling on Submitted Matter: Pls.' Mot. for Prelim. Inj.; Stmt of

9    Decision & Findings of Fact & Concl. of Law, dated November 16, 2009

10   (Document 86) ("Prelim. Inj. Order") at 6.)

11         Further, this Court has concluded that neither the *Rooker-Feldman* doctrine,

12   the Anti-Injunction Act, the abstention doctrine established by *Colorado River*

13   *Water Conservation District v. United States*, 424 U.S. 800 (1976), nor the

14   *Younger* abstention doctrine, bars this action.  (Prelim. Inj. Order at 7-8.)

15   Nevertheless, citing *Hoover v. Wagner*, 47 F.3d 845, 851 (7th Cir. 1995) and

16   *Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326, 332 (6th Cir. 1998),

17   Defendant OCDA argues that "the facts required to confer federal jurisdiction are

18   not present in this case" and urge the Court to "abstain from exercising jurisdiction

19   over Plaintiffs claims."  (Proposed Joint Pretrial Conf. Order, dated Nov. 1, 2010

20   (Document 325-1) ("PPTCO") at 4-5, 16; *see also* Def. OCDA's Memo. of Facts

21   & Law, dated October 18, 2010 (Document 287) ("OCDA Memo F&L") at 21-

22   22.)  Defendant OCDA's arguments lack merit and should be rejected.

23         The Ninth Circuit has observed that "although there are limited

24   circumstances in which [ ] abstention by federal courts is appropriate, those

25   circumstances are carefully defined and remain the exception, not the rule, and

26   that as a general matter, the federal courts' obligation to adjudicate claims within

27   their jurisdiction is 'virtually unflagging. "  *Green v. City of Tucson*, 255 F.3d

28                                            4

1   1086, 1089 (9th Cir. 2001) (en banc) (citations and quotations omitted), *overruled*

2   *in part on other grounds by Gilbertson v. Albright*, 381 F.3d 965, 969 (9th Cir.

3   2004) (en banc).   Here, Defendant OCDA asserts that "Plaintiffs' proposed

4   injunction would [ ] be an improper intrusion into the Superior Court's right to

5   supervise its own injunction," particularly where, as Defendants claim, "Plaintiffs

6   have yet to even attempt to have their concerns with the Superior Court's

7   injunction addressed by the Superior Court."   (OCDA Memo F&L at 21.)

8        Despite Defendant OCDA's claim, Plaintiffs are not required to exhaust

9   state remedies by moving to intervene in the state court proceedings before

10   bringing their claims to federal court.  "The Supreme Court has explained that

11   'exhaustion of state administrative remedies is not a prerequisite to an action

12   under § 1983.'"  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895,

13   900 (9th Cir. 2007) (citation omitted).  More specifically, citing *Green Trees*

14   *Enters. v. Palm Springs Alpine Estates*, 66 Cal. 2d 782, 788 (1967), this Court

15   found that Plaintiffs are not obligated to intervene.  (Prelim. Inj. Order at 8

16   (recognizing intervention may be required where there is "a relationship with a

17   party to a state proceeding," but finding that "such a relationship has not been

18   shown in this case")).

19        Defendant OCDA's reliance on *Gottfried* and *Hoover* is equally misguided.

20   In *Gottfried*, although the Sixth Circuit found that neither *Younger* nor *Rooker-*

21   *Feldman* required abstention where a federal plaintiff challenged an injunction

22   limiting anti-abortion protests to which she had not been a party, the court

23   ultimately concluded that concerns of comity required that federal court abstain in

24   order to give "the state judge the first chance to bring the injunction into

25   compliance with constitutional law," in an analogy to abstention under *Railroad*

26   *Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).  *See Gottfried*, 142

27   F.3d at 330-31.  But the plaintiff in *Gottfried* argued that the injunction itself

28                                        5

1   violated "her constitutional rights of free speech, free press, peaceful assembly,

2   association, free exercise of religion, due process, and equal protection," and

3   "asked the District Court to declare the injunction unconstitutional on its face or as

4   applied." *Id.* at 328.  Plaintiffs do not in this Court challenge the constitutionality

5   of the Order itself; they challenge only Defendants' act of applying it to them after

6   dismissing them from the state court suit, which they maintain denied them due

7   process.  Unlike in *Gottfried*, there would be no value in giving "the state judge

8   the first chance to bring the injunction into compliance with constitutional law"

9   because the terms of the Order are not at issue.

10          Similarly in *Hoover*, after holding that the plaintiffs' federal challenge to a

11  state court injunction limiting anti-abortion protesting was not barred by *Younger*

12  or *Rooker-Feldman*, the Seventh Circuit nonetheless dismissed the case on

13  grounds that the equitable relief sought was not appropriate where it "would

14  impair or affront the sovereign powers or dignity of a state or a foreign nation."

15  *Hoover*, 47 F.3d at 850.  But *Hoover* is distinguishable from the present case.  In

16  *Hoover*, plaintiffs challenged the injunction directly — they sued "a Milwaukee

17  state judge and the city's chief of police," seeking "a declaration that the

18  injunction which the state judge issued in the case of *State v. Missionaries to the*

19  *Preborn*, now pending on appeal to Wisconsin's intermediate court of appeals, is

20  vague and overbroad and infringes the plaintiffs' freedom of speech," and

21  enjoining the police from enforcing it on those grounds.  *Id.* at 846.  The *Hoover*

22  court held that equitable relief was unavailable to impose a particular

23  interpretation of the state court injunction on the state judge and chief of police.

24  *See id.* 850–51 (characterizing equitable relief sought as requiring "the federal

25  court to tell the state judge to rewrite his injunction to make it clearer, to refrain

26  from convicting anybody who does not really and truly violate the injunction as

27  revised, and to tell the police chief and the judge not to infer that people are

28

6

1   assisting in violating the injunction from their mere proximity to defendants

2   named in the injunction"). Here, the relief Plaintiffs seek does not challenge the

3   Order itself or ask this Court to interpret any of the Order's terms.

4          Even were this case indistinguishable from *Hoover* and *Gottfried*, there is

5   no support in Ninth Circuit case law for declining the exercise of jurisdiction.

6   Under Ninth Circuit law, therefore, this Court is not empowered to embark on the

7   novel doctrines for abstention embraced by *Hoover* and *Gottfried*.

8          The injunctive relief Plaintiffs seek here – to prevent Defendants from

9   arresting or otherwise initiating (or threatening to initiate) future criminal

10  proceedings against them – targets not state judicial proceedings but executive

11  acts. *See Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1002 (9th Cir. 1995)

12  (holding that "arrests and . . . issuance of . . . citations were executive, not judicial,

13  acts"). The state court proceedings that resulted in issuance of the Order have

14  concluded, Plaintiffs here were not parties to the proceedings when the Order was

15  issued, and the future proceedings Plaintiffs seek to prevent Defendants from

16  initiating would be new and separate prosecutions for criminal contempt under

17  California Penal Code § 166(a)(4). Thus, neither in intent nor effect does

18  Plaintiffs' action threaten to interfere with state judicial proceedings so as to

19  warrant abstention.

20  **II.    PLAINTIFFS ARE NOT REQUIRED TO EXHAUST THEIR**

21  **HABEAS CLAIM UNDER §2241.**

22         Defendants both assert that Plaintiffs' habeas claim is barred because

23  "Plaintiffs have not exhausted their available state court remedies required for

24  habeas corpus relief as required by 28 U.S.C. § 2254." (PPTCO at 16 & 18.)

25  Plaintiffs, however, clearly do not bring a habeas claim under 28 U.S.C. § 2254,

26  but a claim under 28 U.S.C. § 2241. (Id. at 4 & 13-14.) Such an exhaustion

27  requirement applies only to petitioners who are "in custody pursuant to the order

28                                          7

of a State court" under 28 U.S.C. § 2254.  Here, Plaintiffs' custody is not "pursuant to the order of a State court."  Indeed, the very gravamen of Plaintiffs' complaint is that Defendants dismissed them from the underlying State Action, depriving them of the opportunity to contest the Order or its applicability to them prior to its issuance and service, and then served them with and enforced against them an Order that was not issued against them.  Because Plaintiffs' custody is not "pursuant to the judgment of state court," their habeas claim is properly brought under 28 U.S.C. § 2241, which has no exhaustion requirement.  See 28 U.S.C. §2241; *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351 (11th Cir. 2008) ("persons challenging detention that is not pursuant to a [state court] judgment . . . need not" satisfy the procedural requisites of § 2254).

That the exhaustion requirement of 28 U.S.C. §2254(c) is inapplicable is further demonstrated by its purpose.  The exhaustion requirement protects comity between state and federal systems — to avoid friction between state and federal systems, it provides that a federal district court should not "overturn[] a state court [judgment] without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  But here, no comity concern arises because, as this Court has recognized repeatedly, Plaintiffs' claims do not challenge any judgment of the state court, only Defendants' unlawful decision to subject them to an injunction not entered against them without providing them any prior hearing on whether such enforcement is appropriate. This Court is not reviewing the decision of a state court, only the actions of state executives.  The exhaustion requirement therefore does not apply.

### III.   INJUNCTIONS THAT DEPRIVE INDIVIDUALS OF THEIR LIBERTY INTERESTS MUST COMPORT WITH DUE PROCESS.

As this Court indicated in its September 27, 2010 Order re the parties'

8

1   motions for summary judgment, *Mathews v. Eldridge*, 424 U.S. 319 (1976)

2   provides the proper framework to "determine how much process may be due with

3   respect to the alleged deprivation of liberty in this action." (Court Order re

4   Motions for Summ. J. & Partial Summ. J., dated Sept. 27, 2010 ("SJ Order") at 6.)

5   Nevertheless, Defendants continue to claim that "Plaintiffs due process rights have

6   not been violated as the process used by the OCDA is exactly what is

7   contemplated in FRCP 65(d)." (Def. OPD's Memo. of Contentions of Fact &

8   Law, dated Oct. 18 (Document 279) ("OPD Memo F&L") at 11; *see also* OCD

9   Memo. F&L at 4-9). In fact, Defendant OPD does not refer to *Mathews* at all in its

10   Memorandum of Contentions of Fact and Law.

11        As Plaintiffs have shown in their prior briefing, as well as in their October

12   18, 2010 Memorandum of Contentions of Fact and Law, application of well-

13   settled due process principles demonstrates that Defendants violated Plaintiffs'

14   rights by subjecting them to parole-like restrictions without *any* prior process. As

15   to Defendants' recent filings, Plaintiffs would like to address a few points.

16        First, Defendants betray a complete misunderstanding of what constitutes a

17   deprivation of liberty sufficient to trigger procedural due process protections. For

18   example, Defendant OCDA states that Plaintiffs "cannot show that the injunction

19   infringes upon their right to free speech and expression in an *impermissible*

20   manner in *violation of the Constitution.*" (OCDA Memo. F&L at 12 (emphasis

21   added).) However, a deprivation need not be impermissible or in violation of the

22   Constitution in order to invoke due process protections. Indeed, an individual

23   who is caught in the act of committing a crime and is lawfully arrested is still

24   entitled to a trial before he is deprived of his right to physical freedom. The

25   Constitution guarantees the arrested individual due process, not because the police

26   unlawfully arrested him, or because he did not in fact commit the crime, but

27   simply because the government seeks to deprive him of his liberty interest. As

28

9

1    such, the government must provide him with notice and an opportunity to be heard

2    before that deprivation occurs.  Similarly, Plaintiffs need not prove, as Defendants

3    suggest, that the Order's restrictions are impermissible to invoke due process

4    protections.  Neither do Plaintiffs need to show that they are innocent of the

5    allegations made against them.  Any burden on Plaintiffs' constitutionally

6    protected liberty interests - speech, movement, association – implicates liberty and

7    triggers the need for a *Mathews* analysis, whether permissible or not.

8         Second, Defendants claim that Plaintiffs have not been deprived of their

9    liberty interest in association because "Courts have held that there is no First

10   Amendment protection for collective public activities of gang members." (OCDA

11   Memo. F&L at 11.)  In truth, Plaintiffs assert that by subjecting Plaintiffs to the

12   Order, Defendants have deprived Plaintiffs of their right to intimate associations.

13   Central to the concept of liberty are those personal affiliations that "attend the

14   creation and sustenance of a family-marriage . . . ; the raising and education of

15   children . . . ; and cohabitation with one's relatives."  *Roberts v. United States*

16   *Jaycees*, 468 U.S. 609, 618-19 (1984).  "Family relationships, by their nature,

17   involve deep attachments and commitments to the necessarily few other

18   individuals with whom one shares not only a special community of thoughts,

19   experiences, and beliefs, but also distinctively personal aspects of one's life." *Id.*

20   at 619-20; *see also id.* at 618 ("[B]ecause the Bill of Rights is designed to secure

21   individual liberty, it must afford the formation and preservation of certain kinds of

22   highly personal relationships a substantial measure of sanctuary from unjustified

23   interference by the State.").

24        Under the Order, Plaintiffs are at risk of arrest and criminal prosecution if

25   they stand, sit, walk, drive, bicycle, gather or appear (within the Safety Zone) in

26   any public place, any place accessible to the public or in public view with any

27   person "named herein." (Order for Permanent Injunction in State Action, dated

28

10

1   May 14, 2009 ("Order") §a.)[2]  Not only do those persons "named herein" include

2   siblings, as well as parents and children,[3] but the restriction on their association

3   with one another applies to schools, churches, libraries, stores, and restaurants – to

4   name a few – and even within their own home, if they are "in public view."

5       Plaintiffs also have a liberty interest in associating "for the purpose of

6   engaging in those activities protected by the First Amendment – speech, assembly,

7   petition for the redress of grievances, and the exercise of religion." *Roberts*, 468

8   U.S. at 618.  Section a of the Order entitled "Do Not Associate," however, has no

9   exceptions for such First Amendment activity.  Therefore, Plaintiffs are at risk of

10  arrest and criminal prosecution for associating with any person who fits within the

11  categories of Section a, even if such association is for the purpose of participating

12  in a protest or rally, attending a City Council meeting, or attending church

13  services.

14      Section a also does not have any exception for being present at school

15  attending class or on school business.  *See Roberts v. United States Jaycees*, 468

16  U.S. 609, 622 (1984) ("[I]mplicit in the right to engage in activities protected by

17  the First Amendment [is] a corresponding right to associate with others in pursuit

18  of a wide variety of political, social, economic, educational, religious, and cultural

19  ends.").  Accordingly, Plaintiffs are at risk of arrest and criminal prosecution if

20  they attend any of the schools within the Safety Zone where others who fall within

---

22  [2]  To determine whether the Order implicates Plaintiffs' liberty interest, the Court need only look at the plain language of the Order.

23  [3]  In binding Plaintiffs to the Order, for instance, Defendants restricted
24  Plaintiff Manuel Vasquez from associating with his brother Sergio Vasquez, Anna
    Cooper from associating with her son, and Joe Alvarado from associating with his
25  daughter, all of whom were named as individual defendants in the State Action
    and now bound by the terms of the Order.  Such restrictions to these individuals'
26  intimate familial associations are particularly significant since they all live within
    the Safety Zone.  Likewise, brothers Gabriel and Randy Bastida are prohibited
27  from associating with one another while visiting their relatives, including their
    grandparents, who live in the Safety Zone.

28                                        11

1   the categories of restricted associations are also present.

2          Last, Plaintiffs have a liberty interest in not being subject to criminal

3   sanctions based on guilt by association. *See N.A.A.C.P. v. Clairborne Hardware*

4   *Co.*, 458 U.S. 886, 918-19 (1982) ("The First Amendment [ ] restricts the ability of

5   the State to impose liability on an individual solely because of his association with

6   another."); *see also McCoy v. Stewart*, 282 F.3d 626, 632-33 (9th Cir. 2002)

7   (holding that defendant's conviction for participating in a street gang "strays

8   dangerously close to a finding of guilt by association [which] . . . even in the

9   context of a street gang, cannot be squared with the First Amendment"). Plaintiffs

10  risk arrest and prosecution for "remain[ing] in the presence" of certain classes of

11  individuals without requiring a "knowing affiliation" with the individual

12  possessing unlawful aims and goals and "a specific intent to further those illegal

13  aims." *Healy v. James*, 408 U.S. 169, 186 (1972). Accordingly, by subjecting

14  Plaintiffs to the terms of the Order, Defendants have deprived Plaintiffs of their

15  liberty interest in being free from guilt by association.

16  **IV.   OCDA'S REMAINING AFFIRMATIVE DEFENSES ARE ALSO**

17  **MERITLESS.**

18         Defendant OCDA's contention that Plaintiffs' proposed injunctive relief

19  would violate the First Amendment right of Orange County district attorneys "to

20  advocate before a sitting Superior Court judge" is nonsensical. (PPTCO at 16.)

21  Granting injunctive relief that prohibits the OCDA and OPD from enforcing the

22  injunction against Plaintiffs based on the process given them thus far does not

23  violate Defendant OCDA's First Amendment rights. OCDA has a First

24  Amendment right to argue that the Order should be enforced against Plaintiffs, as

25  it does here. Indeed, if this Court grants Plaintiffs relief, it would provide district

26  attorneys with more—not fewer—opportunities to advocate before Superior Court

27  judges, as Defendants would have to provide a pre-deprivation process in the

28

1    Superior Court at which they could argue that an individual should be subject to

2    the terms of the injunction.

3          Nevertheless, if this Court disagrees with OCDA's dismiss-and-serve

4    tactics, adjudicates the matter in Plaintiffs' favor, and orders OCDA not to enforce

5    the Order based on the process so far given, OCDA has no First Amendment right

6    to violate this Court's order by subjecting Plaintiffs to legal proceedings in a

7    manner this Court has held to be unconstitutional.  The First Amendment provides

8    no justification for Defendant to bring a case the very filing of which requires re-

9    litigation of issues already settled by this Court.  Such injunctions are the ordinary

10   means to remedy unconstitutional actions by state officials – or at least have been

11   for the last century since the Supreme Court in *Ex Parte Young*, 209 U.S. 123

12   (1908), held that the proper avenue to challenge an unconstitutional state law is to

13   sue state officials individually to enjoin them from enforcing it.  In *Ex Parte*

14   *Young*, in fact, the district court issued a preliminary injunction restraining the

15   Minnesota attorney general from enforcing a law of questionable legality.  209

16   U.S. at 126, 133.  When the petitioner disobeyed the order by filing mandamus

17   proceedings in state court, the district court held him in contempt and ordered him

18   taken into custody until he dismissed the action.  *Id.*  The Supreme Court affirmed

19   the district court's action.

20         Further, the cases Defendant OCDA cites are entirely inapposite, as they

21   deal with restrictions placed upon attorneys regarding the particular arguments or

22   statements they may make on behalf of their clients.  *See Legal Services Corp. v.*

23   *Velasquez*, 531 U.S. 533, 547 (2001) (noting that the "effect of the restriction" at

24   issue was "to prohibit advice or argumentation that existing welfare laws are

25   unconstitutional or unlawful"); *Eng v. Cooley,* 552 F.3d 1062, 1069-70 (9th Cir.

26   2009) (holding that a state employer may not retaliate against an employee based

27   on statements made by the employee's lawyer).  Plaintiffs' proposed injunctive

28                                          13

1    relief has no bearing on *which* arguments district attorneys could make in Superior

2    Court proceedings; it simply requires them to make *an* argument.[4]

3         Last, OCDA's seventh affirmative defense—that Plaintiffs are barred from

4    injunctive relief because they "come to this Court in equity with unclean

5    hands"—is similarly meritless.  (PPTCO at 17.)  The unclean hands doctrine "bars

6    recovery by a plaintiff (1) whose behavior is tainted with inequitableness or bad

7    faith (2) that occurred in acquiring the right he now asserts."  *Trustees of S. Cal.*

8    *Bakery Drivers Sec. Fund v. Middleton*, 366 Fed. Appx. 810, *2 (9th Cir. 2010);

9    *see also Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814

10   (1945).  Not only has the OCDA not listed those elements of the unclean hands

11   defense in its section of the Proposed Joint Pretrial Conference Order, but it also

12   has not offered any semblance of evidence that would show that Plaintiffs acted in

13   bad faith with respect to their assertion of federal due process rights in this action.

14   Nor can Defendant OCDA offer any such evidence, as Plaintiffs have a

15   constitutional right to procedural due process guaranteed under *Mathews v.*

16   *Eldridge,* 424 U.S. 319, 334-35 (1976) and have not acted in bad faith in asserting

17   that right.

18   DATED:  November 2, 2010    ACLU FOUNDATION OF SOUTHERN
                                       CALIFORNIA

19

20                                       By: /s/ Belinda Escobosa Helzer
                                            Belinda Escobosa Helzer

21                                       Attorneys for Plaintiff-Petitioners

22

23

24         [4] Unfortunately, an attorney's First Amendment rights are not without
25   restriction in a courtroom.  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071
   (1991) ("It is unquestionable that in the courtroom itself, during a judicial
26   proceeding, whatever right to 'free speech' an attorney has is extremely
   circumscribed."); *see also Zal v. Steppe*, 968 F.2d 924, 931 (9th Cir. 1992) (Trott,
27   J. concurring) ("a lawyer properly functioning as such on behalf of a client has no
   independent First Amendment rights in the courtroom").

28                                       14